# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JASON SCHMITZ, *et al.*,** | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| Plaintiffs, | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF FLSA COLLECTIVE/CLASS ACTION SETTLEMENT

**Michael A. Starzyk**
Attorney-in-Charge
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380

**J.P. Hughes, Jr.**
**J.P. HUGHES & CO. ATTORNEYS**
1300 Access Road, Suite 100
Oxford, Mississippi 38655

**Russ M. Herman**
**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113

*ATTORNEYS FOR PLAINTIFFS*

i

## TABLE OF CONTENTS

COVER PAGE.............................................................................................................. i

TABLE OF CONTENTS........................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iv

TABLE OF EXHIBITS ............................................................................................. vii

INTRODUCTION ......................................................................................................1

FACTUAL AND PROCEDURAL HISTORY ..........................................................4

I.      The Rough Legal Landscape For FLSA Misclassification Cases .......................4

II.     Summary Procedural History...........................................................................5

III.    The Failed Early Attempt At Settlement And The Early Depositions...............6

IV.     Plaintiffs' Motion For Conditional Certification. ..............................................6

V.      The Failed Second Attempt At Early Settlement And Failed Mediation...........7

VI.     Liberty Mutual's Vigorous Opposition To Conditional Certification ...............7

VII.    The Parties' Significant Discovery And Plaintiffs' Motion To Compel..............8

VIII.   The Settlement.................................................................................................9

        A.      Class Notice. ........................................................................................10

        B.      The Claims Process................................................................................10

        C.      Named Plaintiff Service Payments To Eight Plaintiffs...........................11

ARGUMENT AND AUTHORITIES ......................................................................12

I.      Preliminary Approval Of The Settlement Is Merited.......................................12

        A.      The Criteria For Preliminary Approval. .................................................13

        B.      The Two-Step Approval Process............................................................14

        C.      The Settlement Is The Product Of Arms-Length Negotiations .............15

D.      No Segment Of The Class Is Receiving Preferential Treatment ............................16

E.      The Notices And Procedures Governing The Notice Process Satisfy All
        Requirements ........................................................................................................16

F.      The Named Plaintiff Service Payments Are Reasonable .......................................18

G.      The Proposed Payment Of Fees And Costs To Class Counsel Is Reasonable .......19

CONCLUSION....................................................................................................................21

CERTIFICATE OF CONFERENCE.....................................................................................24

CERTIFICATE OF SERVICE .............................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Brechler v. Qwest Communications Int'l, Inc.*,
  No. cv-06-00940-PHX-ROS (D. Ariz. March 17, 2009)(order decertifying class of call center workers) .............................................................................................................4

*Braunstein v. Eastern Photographic Laboratories, Inc*,
  600 F.2d 335 (2d Cir. 1978) ...................................................................................2

*Camp v. Progressive Corp.*,
  2004 WL 2149079 (E.D.La. Sept. 23, 2004) ...........................................................11, 18

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...............................................................................12, 13

*Dehoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. [San Antonio Division] 2007) .......................................11, 18

*Dybach v. State of Fla. Dept. of Corrections*,
  942 F.2d 1562 (11th Cir. 1991) ..............................................................................2

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ................................................................................13

*Gonzales v. Liberty Mutual Ins. Co.*,
  No. 09-cv-3117 (S.D. N.Y. filed April 1, 2009) ......................................................1

*In re Granada Partnership Securities Litigation*,
  803 F. Supp. 1236 (S.D. Tex. [Houston Division] 1992) .........................................18

*In re Lease Oil Antitrust Litigation (No. II)*,
  186 F.R.D. 403 (S.D. Tex. [Corpus Christi Division] 1999) .....................................18

*In re Nissan Motor Corp. Antitrust Litigation*,
  552 F.2d 1088 (5th Cir. 1977) ...............................................................................17

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) .............................................................................14

*In re State Street Bank & Trust Co. ERISA Litigation*,
  2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) ..........................................................14

*In re Traffic Executive Ass'n-E. R.R*,
  627 F.2d 631 (2nd Cir. 1980) ................................................................................14

*In re Wells Fargo Home Mortgage Overtime Pay Litigation,*
    517 F.3d 953 (9th Cir. 2009) .............................................................................................4

*Jarrad v. Southeastern Shipbuilding, Corp.,*
    163 F.2d 960 (5th Cir. 1947) ...........................................................................................13

*Johnson v. Georgia Highway Express, Inc,*
    488 F.2d 714 (5th Cir. 1974) ...........................................................................................19

*Kinney Shoe Corp. v. Vorhes,*
    564 F.2d 859 (9th Cir. 1977) .............................................................................................2

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir. 1982) .......................................................................................13

*Mathis v. Exxon Corp.,*
    302 F.3d 448 (5th Cir. 2002) ...........................................................................................19

*McNamara v. Bre-X Minerals Ltd.,*
    214 F.R.D. 424 (E.D. Tex. 2002).......................................................................................14

*Murillo v. Texas A&M Univ. Sys.,*
    921 F.Supp. 443 (S.D. Tex. 1996) .....................................................................................12

*Newby v. Enron Corp.,*
    394 F.3d 296 (5th Cir. 2004) ...........................................................................................14

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir.), *cert. denied,* 459 U.S. 828 (1982)........................................13, 14

*Purdie v. Ace Cash Express, Inc.,*
    2003 WL 22976611 (N.D. Tex. 2003)................................................................................18

*Quintanilla v. A&R Demolition, Inc.,*
    2007 WL 5166849 (S.D. Tex. May 7, 2007) .................................................................13, 17

*Rosenbaum v. MacAllister,*
    64 F.3d 1439 (10th Cir. 1995) .........................................................................................19

*Schwartz v. TXU Corp.,*
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...............................................................12, 13

*Smith v. Tower Loan of Miss., Inc.,*
    216. F.R.D. 338 (S.D. Miss.  2003) ...................................................................................17

v

*Vaughn v. Amer. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007)..............................................17

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ........................................................4

**Regulations**

29 C.F.R. § 778.114(a)....................................................................5

Rules of Civil Procedure

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................16

Fed. R. Civ. P. 23(e) ...................................................................13, 14

**Secondary Sources**

Manual For Complex Litigation (Third) § 30.41 (1995) ..........................14

Newberg & Conte, Newberg On Class Actions § 11.26 (3d ed. 1992)(updated 2007) . 12-14, 19

Schneider & Stine, Wage And Hour Law: Compliance & Practice § 20:19.50..................4, 10

## APPENDIX OF EXHIBITS

Joint Stipulation of Settlement and Release of Class Claims ...........................................**Exhibit 1**

Notice A and Claim Form
      (For those Individuals who are Only "Settlement Class Members") ...................**Exhibit 2**

Notice B and Claim Form
      (For those Individuals who are "Non-FLSA (NY) Settlement Class Members")  **Exhibit 3**

Notice C and Claim Form
      (For those Individuals who are Both "Settlement Class Members" and
      "Rule 23/NY Settlement Class Members")  ..........................................................**Exhibit 4**

Reminder Letter ...........................................................................................................**Exhibit 5**

Affidavit of Michael A. Starzyk ..................................................................................**Exhibit 6**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JASON SCHMITZ, *et al.*,** | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF FLSA COLLECTIVE/CLASS ACTION SETTLEMENT**

## INTRODUCTION

The parties have agreed to a $33.75 million settlement of the claims for unpaid overtime and straight time wages under the Fair Labor Standards Act (the "FLSA" or the "Act") (29 U.S.C. § 201 *et seq.*) of a class of more than 3,000 current and former Liberty Mutual Personal Markets Sales Representatives (the "Class Members"). The core allegation of Plaintiffs' action is that they were improperly classified as exempt from overtime pay. Plaintiffs additionally allege they were shorted 2.5 hours of straight time wages per week, because their base salary allegedly covers a standard work week of only 37.5 hours. The settlement also includes the claims raised in a subsequent action pending in the state of New York and, accordingly provides those Sales Representatives who worked in an office in New York with a claim window that comports with New York's statute of limitations.[1] The executed Joint Stipulation of Settlement

---

[1] On April 1, 2009, another action was filed against Liberty Mutual in New York, *Gonzalez v. Liberty Mutual Insurance Company*, United States District Court, Southern District of New York (Civil Action No. 09 CIV 3117), seeking overtime under New York law as a purported Rule 23 class action. On April 7, 2009, Plaintiffs submitted to this Court a Notice of Related Claim. (Docket No. 43). As further explained in the Unopposed Motion for Leave to File Second Amended Complaint filed concurrently with this Motion, both the instant action and the *Gonzalez* litigation concern the application of the outside sales exemption. Plaintiffs, thus, seek to amend their operative complaint to add the pendent New York claims raised in *Gonzalez* in order to avoid duplicative litigation of the same issue.

1

and Release of Class Claims (the "Settlement Agreement") is attached as Exhibit 1.

The settlement of the Class Members' claims follows over a year of litigation, including a failed mediation in March 2009, significant discovery, dozens of in-person, e-mail and telephonic settlement conferences between counsel, and the parties' full-briefing on Plaintiffs' Motion for Conditional Certification as a Collective Action (including Plaintiffs' Motion to Strike the Declarations filed by Liberty Mutual in opposition to Plaintiffs' Motion for Conditional Certification).   The Settlement Agreement provides Class Members with a substantial recovery without having to endure the complexities, expenses, risks, uncertainty, and probable protracted duration[2] of continued litigation.  By all measures, the Settlement is fair and reasonable.  Accordingly, this unopposed Motion should be granted, preliminarily approving the Settlement Agreement's terms and initiating the Class Members' formal notification.

Upon preliminary approval, the Class Members will be notified of the settlement and its terms and, during the 60-day claim period, the Class Members will be given the opportunity to participate in the settlement.[3]  Thereafter, the parties propose to return for a Final Approval hearing on May 20, 2010, shortly after which the individual Class Members' payments will be mailed, and the case concluded.

Specifically, this Motion asks that the Court preliminarily approve:

---

[2] For example, in the parties' Joint Discovery and Case Management Plan, Liberty Mutual estimated trial would take "20-25 court days, or longer." (*Docket No. 18*, ¶ 18.)

[3] The Settlement Agreement involves (1) the "Rule 23/New York Settlement Class," which includes those Sales Representatives who worked in New York and specifically includes: (i) individuals with FLSA and New York state law claims, and (ii) individuals with only New York state law claims; and (2) the more general class for all Sales Representatives outside of New York, which involves only FLSA claims. Unlike true class actions under Rule 23 in which litigation has a preclusive effect on the claims of a class of plaintiffs unless they elect to "opt out" and be excluded, a collective action under the FLSA requires plaintiffs to "opt in," or affirmatively to indicate their desire to participate in the action. *E.g., Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 335-36 (2d Cir. 1978); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862-863 (9th Cir. 1977).  Those non-New Yorkers who do not "opt in" are not bound by the outcome of the litigation, and may choose to pursue their claims independently.  *Kinney, supra,* 564 F.2d at 862-63

- The terms set forth in the Settlement Agreement as being reasonable, the product of arms-length and informed negotiations, and fair to all Class Members;

- The form and content of the Notices of Proposed Class Action Settlement and Fairness Hearing ("Notices"), Claim Forms ("Claim Forms"), and "Reminder Letter" attached, respectively, as Exhibits 2-5;

- A total of $95,000 in Named Plaintiff Service Payments to eight Plaintiffs;

- Attorneys' fees of 25% of the common fund that is actually claimed and paid out;

- Liberty Mutual's agreement to pay the settlement administration costs and reimburse Plaintiffs for litigation costs capped collectively at $200,000; and

- The following dates, directing the identified party or parties to act as specified by no later than the indicated date:

| TIMING | EVENT |
|---|---|
| Tuesday, January 5, 2010 (12 business days after preliminary approval; thus, excluding Friday, December 25, 2009 [Christmas Day] and Friday, January 1, 2010 [New Years' Day]) | Liberty Mutual provides Class Members' names, last known addresses and phone numbers, partial Social Security numbers, and "Total Individual Compensation" (the "Contact Information") to the Claims Administrator in a suitable electronic format. |
| Friday, January 22, 2010 (12 business days after Claims Administrator receives the Class Members' Contact Information; thus, excluding Monday, January 18, 2010 [MLK Day]) | Claims Administrator mails Notices and Claim Forms to Class Members. |
| Sunday, February 21, 2010 (30 days after Claims Administrator mails Notice and Claim Form to Class Members) | Claims Administrator sends one reminder letter to Class Members who have not responded. |
| Monday, March 8, 2010 (45 days after Claims Administrator mails Notices and Claim Forms to Class Members) | Claims Administrator makes one phone call to each Class Member who has not responded. |
| Monday, March 8, 2010 (45 days after Claims Administrator mails Notices and Claim Forms to Class Members) | Deadline for Class Members to submit objections to the settlement and, as applicable, requests to be excluded. |
| Tuesday, March 23, 2010 (60 days after Claims Administrator mails Notice and Claim Form to Class Members) | Deadline for Class Members to submit Proof of Claim Form. |
| May 20, 2010 at 10:00 a.m. | Final Approval Hearing |

3

## FACTUAL AND PROCEDURAL HISTORY

**I.      The Rough Legal Landscape For FLSA Misclassification Cases.**

Viable misclassification claims are increasingly challenging, as most major employers have considerably narrowed those employees designated as exempt from overtime pay, either as a direct result of a lawsuit or to avoid one.[4]   The prevailing atmosphere differs from just a few years ago, when large numbers of misclassification claims had yet to be brought and many large companies had at least some misclassification exposure.[5]   Now, misclassification cases are commonly viewed by the plaintiffs' bar as among their most difficult cases.[6]

Additionally, courts across the country (including in even traditionally pro-plaintiff venues) are increasingly reluctant to certify collective actions under the FLSA or will later decertify the class after the discovery period on a defense motion for decertification, with all the plaintiffs who filed consents to opt-in dismissed without prejudice.[7]   Misclassification claims are particularly complex in the financial services industry.[8]

**II.     Summary Procedural History.**

Notwithstanding the rough legal landscape, a group of current and former Personal Markets Sales Representatives ("Sales Reps") filed this action in October 2008 contending individually, and on behalf of others similarly situated, that Liberty Mutual had misclassified

---

[4] *See* Affidavit of Michael A. Starzyk in Support of Preliminary Approval (filed concurrently herewith) ("Starzyk Affidavit"), ¶ 27.

[5] *Id.*

[6] *Id.*

[7] *Id.*, ¶ 28*; see also* Schneider & Stine, WAGE AND HOUR LAW:  COMPLIANCE & PRACTICE, § 20:19.50 (hereafter "Schneider") ("Decertification actions frequently are successful."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) (holding California district court did not abuse its discretion in denying class certification in FLSA case filed by external home loan consultants); *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 517 F.3d 953 (9th Cir. 2009) (reversing California district court's class certification in FLSA case file by home mortgage consultants); *Brechler v. Qwest Communications Int'l, Inc.*, Case No. cv-06-00940-PHX-ROS (D. Ariz. March 17, 2009) (Order decertifying class of call center workers).

[8] *Id.*

4

them as exempt from overtime pay.[9]    After two in–person settlement conferences and a voluntary mediation failed (discussed further below), Liberty Mutual aggressively defended against <u>both</u> the collective treatment of Plaintiffs' claims <u>and</u> the misclassification question at the core of this case, contending the Sales Reps satisfied one or more of <u>three exemption defenses</u>: (1) the outside sales exemption; (2) the highly-compensated employee exemption; and (3) the combination/hybrid exemption.[10]    Liberty Mutual's unwavering position was, and continues to be, that it properly classified its Sales Representatives as overtime exempt and that their work varied to such a degree that commonality and typicality could not be satisfied for purposes of class certification.

Liberty Mutual further contended that any overtime liability that was due should be calculated under the "fluctuating workweek" method ("FWW"),[11] which would reduce the Plaintiffs' damages by more than 2/3, since the FWW method calculates overtime at only "one-half" of the regular rate (instead of "time and one-half"), and dictates that the regular rate be determined by dividing an employee's total compensation by total hours worked rather than 37.5 hours per week.[12]    Additionally, Liberty Mutual disputed the number of overtime hours worked by Class Members.[13]

Plaintiffs' Motion for Conditional Certification was fully-briefed as of March 12, 2009.[14] In the months since, the parties engaged in significant discovery (discussed in detail below) and Liberty Mutual produced 61 Declarations (mostly from current Sales Representatives) that ostensibly support its positions against class treatment and Plaintiffs' misclassification theory

---

[9] Docket Nos. 1 (Original Complaint) & 3 (First Amended Complaint).
[10] *See* Docket No. 22 (Liberty Mutual's Opposition to Plaintiffs' Motion for Conditional Certification as a Collective Action).
[11] Starzyk Affidavit, ¶ 16.
[12] 29 C.F.R. § 778.114(a).
[13] Starzyk Affidavit, ¶ 16.
[14] Docket No. 25 (Reply).

and in favor of application of the FWW method of calculating overtime.[15]   Plaintiffs filed a Motion to Strike the Declarations filed by Liberty Mutual in opposition to Plaintiffs' Motion for Conditional Certification and that Motion was also fully briefed by the parties.[16]

### III.   The Failed Early Attempt At Settlement And The Early Depositions.

At a relatively early stage in the case, the parties met and discussed the possibility of settlement. [17]  Though this initial meeting did not substantially advance settlement discussions and though the Scheduling Conference was not until February 11, 2009,[18] the meeting did result in an agreement for Plaintiffs to produce two of the named plaintiffs for early deposition and an agreement to immediately exchange documentary evidence (including substantial data necessary to determine the approximate class size and compensation, without disclosing the identities of the class members).[19]   Liberty Mutual took the deposition of Plaintiff Thomas Young on December 10, 2008 and Plaintiff Jason Schmitz on December 11, 2008.[20]

### IV.   Plaintiffs' Motion For Conditional Certification.

Even before the Initial Scheduling Conference in this action, Plaintiffs filed their Motion for Conditional Certification on January 9, 2009 in a diligent effort to move the case toward collective treatment as soon as possible.[21]   The parties then stipulated that Liberty Mutual's deadline to oppose Plaintiffs' Motion for Conditional Certification would be extended until after they participated in an early mediation.[22]

---

[15] *Id.*
[16] Docket Nos. 59, 61 & 68.
[17] Starzyk Affidavit, ¶ 8.
[18] Docket No. 2 (Order for Conference).
[19] Starzyk Affidavit, ¶ 9.
[20] *Id.*, ¶ 9.
[21] Docket No. 16 (Plaintiffs' Motion for Conditional Certification filed under seal).
[22] Docket Nos. 17 (Agreed Motion for Extension) & 19 (Order Granting Extension).

6

## V.   The Failed Second Attempt At Early Settlement And Failed Mediation.

On January 26, 2009, the parties met personally again, this time at defense counsel's offices in Los Angeles, to discuss the possibility of an early resolution of the case, with no success.[23]   Then on March 6, 2009, the parties convened at defense counsel's offices in Los Angeles to participate in a mediation with Barry Winograd serving as the mediator.[24]   Mr. Winograd had successfully mediated another overtime class action against Liberty Mutual with the same defense team in December 2007, which was part of the rationale for using him to try to mediate a settlement in this action.[25]

At the mediation, Michael Starzyk, Jay Hughes, and Seth Hinkley represented the Plaintiffs and putative Class Members.[26]   Doug Hart and Geoff DeBoskey, along with company representatives who had flown in from Boston, were at the mediation on Liberty Mutual's behalf.[27]   The mediation lasted from morning until early evening, and it was evident that both parties had prepared extensively and shared an intimate familiarity with the key evidence.[28]   The mediation failed to yield a settlement.[29]

## VI.   Liberty Mutual's Vigorous Opposition to Conditional Certification.

After the March 6 mediation failed to yield a settlement, Liberty Mutual filed its opposition to Plaintiffs' Motion for Conditional Certification on March 11, 2009.[30]   Liberty Mutual's Response included 33 witness declarations accompanying its 30-page brief.[31]   Plaintiffs

---

[23] Starzyk Affidavit, ¶ 11.
[24] *Id.*, ¶ 13.
[25] *Id.*, ¶ 13.
[26] *Id.*, ¶ 14.
[27] *Id.*`1
[28] *Id.*
[29] *Id.*
[30] Docket Nos. 22-24 (Liberty Mutual's Opposition to Plaintiffs' Motion for Conditional Certification).
[31] *Id.*

filed their Reply on March 12,[32] and thus, Plaintiffs' Motion for Conditional Certification was fully-briefed and ripe for ruling as of March 12.

## VII.   The Parties' Significant Discovery and Plaintiffs' Motion to Compel.

Liberty Mutual produced over 60,000 pages of Bates-labeled documents in this action.[33] On their part, Plaintiffs have produced almost 2,700 pages of Bates-labeled documents.[34]   In discovery, Liberty Mutual expanded the number of witness declarations produced in opposition to collective treatment of the Plaintiffs' claims and the underlying merits of Plaintiffs' claims from the original 30 to 61.[35]

Plaintiffs served the following written discovery requests to which Liberty Mutual responded:

- Eight sets of Requests for Production (collectively containing 595 Requests, excluding subparts);

- Five sets of Interrogatories (collectively containing 44 Interrogatories, excluding subparts); and

- Four sets of Requests for Admissions (collectively containing 108 Requests).[36]

Plaintiffs deposed six individuals in New York, Georgia, and Massachusetts.[37]   This included a deposition of two Liberty Mutual IT professionals related to the parties' numerous disputes over the proper scope of electronic discovery.[38]

Liberty Mutual served the following written discovery requests to which Plaintiffs responded:

- Seven individual sets of Requests for Production directed to each of seven

---

[32] Docket No. 25 (Plaintiffs' Reply Supporting Motion for Conditional Certification).
[33] Ex. 1, Settlement Agreement, § 2.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*

original plaintiffs (containing 51 Requests per set, for a total of 357 Requests among the seven sets);

- A set of Requests for Production directed to all the original named plaintiffs and those who later filed consents to join this lawsuit (which to date total over 160 current and former Sales Representatives) (containing 19 Requests); and

- Seven individual sets of Requests for Admissions directed to each of seven original named plaintiffs (containing 25 Requests per set, for a total of 175 Requests).[39]

In June, Plaintiffs also prosecuted a Motion to Compel production of witness "Participation Agreements" executed by Liberty Mutual's Declarants and the identities and contact information for the co-workers and managers (current and going back to January 1, 2006) of the Declarants and all individuals who worked in their offices going back to January 1, 2006.[40]  Magistrate Frances H. Stacy granted in part and denied in part this Motion.[41]

## VIII.   **The Settlement.**

The parties have reached a settlement that is memorialized in the fully-executed Settlement Agreement attached as Exhibit 1.  The Settlement Agreement provides as follows:

- An amount that is to be no greater than $33.75 million to settle the disputed claims of all putative Class Members;[42]

- Liberty Mutual's agreement, for purpose of settlement only, to class/collective certification;[43]

- A total of $95,000 in Named Plaintiff Service Payments to eight Plaintiffs (Schmitz at $25,000; Barouh, Copeland-Nava, and Young at $15,000 each; Winter at $10,000; and Bailey, Hargraves, and Jones at $5,000 each), in exchange for General Releases;[44]

- Liberty Mutual's non-opposition to Plaintiffs' attorneys' fees request of 25% of

---

[39] *Id.*
[40] Docket Nos. 51 (Plaintiffs' Motion) & 55 (Liberty Mutual's Opposition).
[41] Docket Nos. 70 (Order) & 72 (Amended Order).
[42] Ex. 1, Settlement Agreement, §§ 1.9 & 12.1.
[43] Ex. 1, Settlement Agreement, § 6.
[44] Ex. 1, Settlement Agreement, § 11.

9

the settlement pay-out;[45]

- Liberty Mutual's agreement to pay the settlement administration costs and reimburse Plaintiffs' for litigation costs, collectively capped at $200,000;[46] and

- The release of all FLSA and related state and local wage and hour claims for all putative collective action members who participate in the settlement,[47] and the additional release of all New York State wage and hour law claims for all putative New York Class Members who do not exclude themselves from the settlement.[48]

### A.    Class Notice.

The Settlement Agreement sets forth that, within 12 business days of preliminary approval, Liberty Mutual will provide the Claims Administrator with a list of all Class Members' names and contact information in a suitable electronic format.  The Claims Administrator will initially send the Notices and Claim Forms, the content of which has been mutually drafted and agreed upon by Class Counsel and Liberty Mutual's counsel.[49]

### B.    The Claims Process.

The Settlement Agreement provides for the following claims and opt-out procedures during a 60-day claims period:

- Liberty Mutual provides, twelve (12) business days after date of preliminary approval, the Claims Administrator with Class Members' names, addresses, phone numbers, partial social security numbers, and Total Individual Compensation.[50]

---

[45] Ex. 1, Settlement Agreement, § 12.2.

[46] Ex. 1, Settlement Agreement, §§ 1.11 & 12.2.

[47] An employer's liability under the FLSA runs backward either two or three years (depending on whether plaintiffs can show a "willful" violation) from the date each plaintiff opts in; an individual's claim does not simply relate back to the time of filing by the original plaintiff, Schneider, *supra*, § 20:19.50.  Here, Plaintiffs successfully negotiated for the entire class a (minimum) three-year claim period commencing backwards from the date this case was filed by the original named plaintiff (Jason Schmitz) on October 3, 2008.  Ex.1, Settlement Agreement, § 1.15.

[48] Ex. 1, Settlement Agreement, §§ 1.15 & 7.1 (because the settlement for New York Class Members encompasses New York State wage and hour law claims as well as FLSA claims, their class period is longer than for the rest of the country). In addition, the release period for employees assigned to work in California and in no other state in a Sales Position between October 1, 2008 and December 31, 2008 ends on October 1, 2008 because Liberty Mutual reclassified its California Sales Representatives as non-exempt effective October 1, 2008.

[49] True and correct copies of the three types of Notices and Claim Forms (i.e., for FLSA only, New York Rule 23 only, and New York Rule 23/FLSA) are attached as Exhibits 2-4.

[50] Ex. 1, Settlement Agreement, § 8.1.

- The Claims Administrator mails, twelve (12) business days after receiving this contact information from Liberty Mutual, the Notices and Claim Forms (collectively, the "Notice Packet") to Class Members.[51]

- The Claims Administrator sends a Reminder Letter, mutually drafted and agreed upon by the parties,[52] to Class Members who have not responded thirty (30) days after mailing of the Notice Packet.[53]

- The Claims Administrator will subsequently, fifteen (15) days prior to the end of the Claim Period, make a telephone call to any Class Members who still have not mailed either a Claim Form or request for exclusion.[54]

- Forty-five (45) days after the Notice Packet is mailed is to be the last day to object or request exclusion from the Rule 23 New York (only) settlement class.[55]

- Sixty (60) days after the Notice Packet is mailed is to be the last day to submit Claim Forms.[56]

### C.     *Named Plaintiff Service Payments To Eight Plaintiffs.*

The Settlement Agreement provides for Named Plaintiff Service Payments totaling $95,000 to be paid to eight Plaintiffs (the "Service Plaintiffs") in exchange for General Releases.[57] "'Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and the burdens they shoulder during litigation.'" *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.,* 2004 WL 2149079, at *8 (E.D.La. Sept. 23, 2004)).   Throughout the litigation, the Service Plaintiffs assisted Class Counsel with the prosecution of this case and ably served their former and current co-workers as their representatives.[58]   They provided key documentation to Class Counsel, substantive responses to formal discovery, assistance with

---

[51] *Id.*
[52] The proposed Reminder Letter for which this Motion seeks the Court's approval is attached as Exhibit 5.
[53] Ex. 1, Settlement Agreement, § 8.1.
[54] *Id.*
[55] *Id.*, §§ 1.22, 8.2 & 8.3.
[56] *Id.*, §§ 1.21, 8.4 & 9.
[57] *Id.*, § 11.
[58] Starzyk Affidavit, ¶ 32.

generating discovery requests to Liberty Mutual, and helped Class Counsel prepare for its depositions.[59]  Two of the Service Plaintiffs prepared for and testified at their own depositions.[60] In addition to supplying key evidence and providing contact information for other witnesses, the Service Plaintiffs also reliably assisted with the analysis of information provided by Liberty Mutual in its pleadings and discovery.[61]

## ARGUMENT AND AUTHORITIES

### I.        Preliminary Approval Of The Settlement Is Merited.

Where the settlement terms are fair and reasonable, the settlement is presumptively valid, subject only to objections that may be raised at a final hearing.  *See* Newberg & Conte, NEWBERG ON CLASS ACTIONS, § 11.26 (3d ed. 1992) (updated 2007) (hereafter "Newberg"); *Murillo v. Texas A&M Univ. Sys.,* 921 F.Supp. 443, 445 (S.D. Tex. 1996) (citing Newberg). Federal courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered; thus, there is a presumption here that the negotiations were conducted in good faith.  *See* Newberg, *supra,* § 11.51.  Settlement is favored and settlement agreements are realistically assessed.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Schwartz v. TXU Corp.*, 2005 WL 3148350 *23 (N.D. Tex. Nov. 8, 2005).

Having appropriately presented the materials and information necessary to support this unopposed Motion, Plaintiffs request that the Court enter an Order preliminarily approving the settlement, and setting the Final Approval Hearing for May 20, 2010.

---

[59] *Id.*
[60] *Id.*
[61] *Id.* ("We have no doubt that the quality of the Service Plaintiffs' advice and information had a direct, positive, and substantial effect on the dollar value of the case to their fellow class members.")

### A.     The Criteria For Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any settlement of a class action.  FED. R. CIV. PROC. 23(e).  Similarly, private settlements containing a release of wage claims under the FLSA must be approved either by the U.S. Department of Labor or a court. *Jarrad v. Southeastern Shipbuilding, Corp.*, 163 F.2d 960, 961 (5th Cir. 1947); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Quintanilla v. A&R Demolition, Inc.*, 2007 WL 5166849 * 2 (S.D. Tex.  May 7, 2007).  Precedent makes clear that settlements such as the one at bar, which are reached through arms-length negotiation with the assistance of counsel, are strongly favored.  *Cotton, supra*, 559 F.2d at 1330-31; *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("'[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class actions suits.'"); *Schwartz, supra,* 2005 WL 3148350 *23 (N.D. Tex. Nov. 8, 2005).

In deciding whether a settlement is reasonable, the court does not decide the merits of the case.  *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982).  Rather, the court determines the fairness of the settlement by considering the following factors: "(1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members." *Id*.

Accordingly, so long as the settlement terms are reasonable and the product of non-collusive negotiations, those terms should be approved as negotiated.  Here, all the criteria for preliminary approval are met and the Settlement Agreement's terms should be approved via the

two-step approval process used throughout the federal court system.

### B.     The Two-Step Approval Process.

As explained in the Manual for Complex Litigation, court approval of class action

settlements is a two-step process:

> First, counsel submit the proposed terms of the settlement and the court makes a
> preliminary fairness evaluation. . . . If the preliminary evaluation of the proposed
> settlement does not disclose grounds to doubt its fairness or other obvious
> deficiencies, such as unduly preferential treatment of Plaintiffs or of segments of
> the class, or excessive compensation for attorneys, and appears to fall within the
> range of possible approval, the court should direct that notice under Rule 23(e) be
> given to the class members of a formal fairness hearing, at which arguments and
> evidence may be presented in support of and in opposition to the settlement.

MANUAL FOR COMPLEX LITIGATION THIRD (1997), § 30.41; *Newby v. Enron Corp.*, 394 F.3d 296,

300(5th Cir. 2004) (noting and implicitly approving the district court's use of a preliminary

approval process); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

Precisely because Class Members will subsequently receive the Notice and have an

opportunity to be heard on the Settlement Agreement's terms, the Court need not review the

settlement in exhaustive detail at this juncture.   Instead, preliminary approval is appropriate so

long as the proposed settlement is not "obviously deficient" and falls within the "range of

possible final approval."   *See* Newberg, *supra,* § 11.25 at 11-37; *In re Shell Oil Refinery*, 155

F.R.D. 552, 555 (E.D. La. 1993).

Approving the dissemination of notice "is at most a determination that there is what

might be termed 'probable cause' to submit the proposal to Class Members and hold a full-scale

hearing as to its fairness."   *In re Traffic Executive Ass'n-E. R.R.*, 627 F.2d 631, 634 (2nd Cir.

1980); *In re State Street Bank & Trust Co. ERISA Litigation,* 2009 WL 3458705 (S.D.N.Y. Oct.

28, 2009).   Here, all of the pertinent factors weigh in favor of granting preliminary approval and

authorizing distribution of the Notice.

### C.    The Settlement Is The Product Of Arms-Length Negotiation.

Plaintiffs and the putative class were represented by experienced counsel.[62]    Liberty Mutual conveyed a clear intention both to aggressively oppose conditional and final certification and to defend the case on the merits, including with the assertion of three alleged exemption defenses.[63]    The mediation in March was conducted before an experienced mediator,[64] and counsel also traveled between Texas and California to try to negotiate a settlement in person.[65] The case was intensely litigated, with nearly 63,000 pages of documents exchanged between the parties, discovery motions, and Class Counsel traveling to New York, Georgia, and Massachusetts to take depositions.[66]

On its part, Class Counsel set out at the earliest stages to obtain sufficient contact information to be able to gain an understanding of the case by interviewing Class Members directly, circumventing the monopoly on information that often benefits employer defendants in wage and hour class actions.[67]    Class Counsel's efforts resulted in over 160 current and former Sales Representatives giving their consent to join this lawsuit independently and without the benefit of conditional certification.[68]

Accordingly, there is every indication that the parties maintained the requisite arms' length posture in their negotiations, and that Class Members benefited in the ways contemplated by this requirement.  The Class Members have a full 60-day Claim Period within which to assess the settlement terms and decide whether to participate in the settlement.    The Notices

---

[62] Starzyk Affidavit, ¶¶ 1-3.
[63] *Id.*, ¶ 17.
[64] *Id.*, ¶ 13.
[65] *Id.*, ¶ 14.
[66] *Id.*, ¶¶ 21-26.
[67] *Id.*, ¶ 32.
[68] *Id.*, ¶ 25b.

exhaustively apprise Class Members of all pertinent information and, like the Settlement Agreement itself, they are the product of the professional but intense relations between the parties that characterized this action.[69]

> **D.     No Segment Of The Class Is Receiving Preferential Treatment.**

All members of the class are subject to the same notice and claims procedures, settlement formulas, and eventual release of claims (except that New York class members have a claim window that extends from October 3, 2002 to December 31, 2008, because there is a later-filed overtime class action case pending against Liberty Mutual in New York brought on behalf of Personal Markets Sales Representatives and so participation in this settlement must effectuate a release of that action as well) (and except that California class members have a claim period that ends on October 1, 2008, which was the effective date of Liberty Mutual's reclassification of its California-based Sales Representatives as non-exempt).[70]  The agreement concerning attorneys' fees and costs and the Named Plaintiff Service Payments, as well as all other aspects of the Settlement Agreement, have been fully disclosed to the Court.  The parties have submitted a copy of the complete Settlement Agreement, and the parties represent that there are no other, undisclosed agreements concerning the conditions for this settlement.[71]

> **E.     The Notices And Procedures Governing The Notice Process Satisfy All Requirements.**

The proposed class Notices (Exhibits 2-4) and proposed method of distribution are both abundantly adequate.   Rule 23 requires that absent class members receive the "best notice practicable under the circumstances."   FED. R. CIV. PROC. 23 (c)(2)(B).  The method and the content of the notice to class members should be designed to fairly apprise them of the terms of

---

[69] *See generally* Starzyk Affidavit.
[70] Docket No. 43 ("Notice of Related Litigation" filed by Plaintiffs on April 7, 2009).
[71] Ex. 1, Settlement Agreement, § 16.4.

the proposed settlements and the options available to them.  *See, e.g., Vaughn v. Amer. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007); *Smith v. Tower Loan of Miss.*, *Inc.*, 216. F.R.D. 338, 352 (S.D. Miss.  2003).

Along these lines, federal courts have made clear that an individual mailing to each class member's last known address is a sufficient form of notice.  *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097-98 (5th Cir. 1977); *Quintanilla, supra,* 2007 WL 5166849 * 1 (S.D. Tex.  May 7, 2007).  Here, the proposed Notices will be sent via first class mail to the last known address of each Class Member, and prior to this mailing, the Claims Administrator will make systematic efforts to update any invalid addresses.[72]  Even before the formal Notice packet will be mailed out by the Claims Administrator, Liberty Mutual has e-mailed all its current Personal Markets Sales Representatives to advise them of the proposed settlement.[73]  The formal Notice will provide the details of the case and the proposed settlement and every option available to the Class Members.[74]  In particular, the Notice will inform each Class Member of the settlement formula and his/her estimated pay-out, thereby permitting every Class Member to make an informed decision about whether to submit a claim form, object, or take other or no action.[75]

Towards the end of the Claim Period, the Claims Administrator will send Reminder Letters to those Class Members who have not yet submitted some form of response.[76]  Those Reminder Letters will be sent fully 30 days before the deadline for submitting a Claim Form.[77] Furthermore, a second reminder – by telephone – will be directed to those Class Members who

---

[72] Ex. 1, Settlement Agreement, § 8.1.
[73] *Id.*, § 16.1 & Ex. 1 thereto.
[74] Exs. 2-4.
[75] Exs. 2-4.
[76] Ex. 1, Settlement Agreement, § 8.1; Ex. 5.
[77] Ex. 1, Settlement Agreement, § 8.1.

still have made no response 15 days prior to the deadline for responding.[78]

The proposed form, content, and procedure by which the Notice will be disseminated meets and exceeds the baseline requirements of Rule 23. Because all of the criteria bearing on preliminary approval favor approval, approval should be granted and the process of formally notifying the Class Members of the settlement begun.

### F.   The Named Plaintiff Service Payments Are Reasonable.

It is customary and appropriate to provide a payment to the named plaintiff(s) for services to the class as class representative(s). *See In re Granada Partnership Securities Litigation*, 803 F. Supp. 1236, 1247 (S.D. Tex. 1992) (Harmon, J.); *In re Lease Oil Antitrust Litigation (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 339-40 (W.D. Tex. 2007) (collecting cases); *Camp, supra,* 2004 WL 2149079, at *7-8; *Purdie v. Ace Cash Express, Inc.,* 2003 WL 22976611, at *7-8 (N.D. Tex. 2003). Here, the total of $95,000 in service enhancements payments to eight Plaintiffs (Schmitz at $25,000; Barouh, Copeland-Nava, and Young at $15,000 each; Winter at $10,000; and Bailey, Hargraves, and Jones at $5,000 each) is commensurate with their contributions to their fellow Class Members and consideration for their General Releases. In particular, both Schmitz and Young had to sit for deposition and Barouh, Copeland-Nava and Winter gathered substantial information for Class Counsel while they were actively employed by Liberty Mutual (and thus, risked retaliation for their actions in this regard).[79]

---

[78] *Id.*
[79] Starzyk Affidavit, ¶ 32.

18

**G.**     ***The Proposed Payment Of Fees And Costs To Class Counsel Is Reasonable.***

The common fund, or "percentage of recovery" doctrine, permits the Court to distribute attorneys' fees from the common source that has been created for the benefit of the Class Members (rather than using the lodestar approach). *See* Newberg, *supra*, § 14:6 at 546-47; *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir. 1995). Attorneys' fees that are fifty percent (50%) of the fund are typically considered the upper limit, with thirty to forty percent (30-40%) awarded in cases where the settlement is relatively small. *See* Newberg, *supra,* § 14:6 at 546-47.

"A fee award is governed by the same law that serves as the rule of decision for the substantive issues of the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Here, the operative Complaint alleges federal causes of action. The fees negotiated by Class Counsel – twenty-five percent (25%) of the common funds paid out – are comparable to, indeed less than, those that have been requested and regularly approved by the federal courts. In considering the reasonableness of a requested fee, the court must consider several factors (commonly referred to as the "*Johnson* Factors"). *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing twelve factors for consideration). These factors are not exclusive and some may or may not be applicable in a particular case.

Each of the twelve *Johnson* Factors either support the requested fee allowance in this case or are not particularly relevant to the facts of this case: (1) the time and labor required to resolve the case was substantial; (2) the issues presented were difficult; (3) Class Counsel exhibited their significant knowledge and skill in FLSA matters; (4) because the firms representing the Plaintiffs were small in size (e.g., 3-4 attorneys, a sole practitioner), this case precluded other employment; (5) the customary fee arrangement in these FLSA cases is by

19

contingent fee agreements; (6) the fee requested by Class Counsel is actually less than the contingency interest set forth in the Representation Agreements with both the original named plaintiffs and with the later opt-in plaintiffs; (7) there were no specific time limitations imposed by the clients therefore the seventh factor is irrelevant; (8) the amount involved and the results obtained were fair and reasonable; (9) the experience of Class Counsel in this area is substantial; (10) the case cannot be considered as "undesirable" in nature therefore the eight factor is not relevant; (11) the nature and length of the professional relationship with the clients is not relevant; and (12) awards in similar cases are similar, indeed greater, than the award requested in this action.

There is nothing to suggest that Class Counsel is receiving an excessive award.  Indeed, the prevailing wisdom among the plaintiffs' wage and hour bar is that misclassification cases have been prolifically litigated over the last decade and that many employers have already reclassified either in response to a lawsuit or to avoid one.[80]  In addition to being vulnerable on the merits, misclassification cases also face considerable challenges as to class certification and with employers contending that the damage model should be only a fraction of the standard overtime premium.[81]  A successful outcome, such as here, will tend to reflect a skilled firm having represented the class.[82]

Here, Class Counsel further injected a claim to recovery of 2.5 hours of straight time per week (in addition to the unpaid overtime) that attorneys in a 2008 class action against Liberty Mutual under California wage and hour law and the FLSA on behalf of California Sales Reps had completely overlooked.[83]  The Class Counsel in that case was awarded nearly thirty-five

---

[80] Starzyk Affidavit, ¶ 27.
[81] *Id.*
[82] *Id.*
[83] *Id*, ¶ 31.

20

percent (35%) of the common fund ($1,216,550 for attorneys' fees and costs out of a $3,500,000 settlement fund).  By contrast, Class Counsel in this action seek recovery of only twenty-five percent (25%) of the amounts <u>actually claimed and paid</u> to class members, for taking on a larger, nationwide class action and for successfully seeking an additional area of recovery for the Class.

Additionally, the Class Members (as licensed insurance agents) are familiar with financial matters and they will be receiving a fair and reasonable cash settlement even after deduction of the requested fee.  Unlike some other types of class settlements, this settlement does not involve coupons or certificates for purchase discounts or other future deductions, but results in a cash settlement for all of the participating Class Members.  The case has been hard fought and Class Counsel have performed their responsibilities with diligence and expertise, particularly since the three firms representing Plaintiffs are not large in size and the nature of the case has required a substantial involvement of their time and effort.

When the inherent challenges of this case are considered alongside the fact that Class Counsel prosecuted it on a contingency fee basis, and the excellent result obtained for the Class, Class Counsel's fee award (which is less than prevailing awards in other wage and hour class action settlements) also merits preliminary, and ultimately final, approval.

## <u>CONCLUSION</u>

As set forth above, all of the pertinent factors weigh in favor of granting preliminary approval and allowing the notice and claims process to proceed.  Accordingly, the parties respectfully request that the Court:

(a)     Grant preliminary approval of the Settlement Agreement;

(b)     Set the objection deadline to end on March 8, 2010;

(c)     Grant preliminary approval of the requested attorneys' fees and costs and Named Plaintiff Service Payments;

(d)     Authorize the mailing of the proposed Notice and Claim Form according to the terms of the parties' Settlement Agreement; and

(e)     Schedule a Final Approval Hearing for May 20, 2010, or as soon thereafter as the matter may be heard.

Respectfully submitted,

_____/Michael A. Starzyk/_____

**Michael A. Starzyk**
Attorney-in-Charge
Texas Bar No. 00788461
Southern District of Texas Bar No.16926
**April L. Walter**
Texas Bar No. 24052793
Southern District of Texas Bar No. 713287

**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

_____/J.P. Hughes, Jr./_____

**J.P. Hughes, Jr.**
Texas Bar No. 24048965
Southern District of Texas Bar No. 943894

**J.P. HUGHES & COMPANY**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [662] 234-6042

22

_/Russ M. Herman/_

**Russ M. Herman**
Eastern District of Louisiana Bar No. 6819
**Stephen J. Herman**
Eastern District of Louisiana Bar No. 23129
**James C. Klick**
Eastern District of Louisiana Bar No. 7451
**John S. Creevy**
Eastern District of Louisiana Bar No. 30879

**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113
T: [504] 581-4892
F: [504] 561-6024

**ATTORNEYS FOR PLAINTIFFS, JASON SCHMITZ, JACKIE BAILEY, CHARLES E. FRAZIER, III, ALLISON CRANE HARGRAVES, COREY ALLEN JONES, THOMAS YOUNG, and OTHERS SIMILARLY SITUATED**

23

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that I have conferred with counsel for Defendant regarding this Motion and that

Defendant does not oppose it.


_____/Michael A. Starzyk/_____
**Michael A. Starzyk**


## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 7, 2009, I electronically filed this document with the Clerk of
the Court using the CM/ECF system, which will send notification of such filing to the following:

>     Douglas R. Hart
>     Geoffrey D. DeBoskey
>     Jason D. Bosch
>     Dana Finkey
>     Katherine A. Roberts
>     Sheppard, Mullin, Richter & Hampton, L.L.P.
>     333 South Hope Street, 48th Floor
>     Los Angeles, CA. 90071-1448
>     Facsimile:  213-620-1398
>
>     Teresa S. Valderrama
>     Jackson Lewis L.L.P.
>     Wedge International Tower
>     1415 Louisiana, Suite 3325
>     Houston, TX 77002
>     Facsimile:  713-650-0405


_____/Michael A. Starzyk/_____
**Michael A. Starzyk**

24