IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASON SCHMITZ, *et al.*, | § | CIVIL ACTION NO. 4:08-cv-02945 |
| Plaintiffs, | § | |
| | § | |
| VS. | § | COLLECTIVE ACTION REQUESTED |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

### RESPONSE TO OBJECTION BY PARTICIPATING CLASS MEMBER MATTHEW AMARAL TO FLSA COLLECTIVE/CLASS ACTION SETTLEMENT

The Named Plaintiffs submit the following Response to the sole objection by former employee and participating Class Member Matthew Amaral (from Rhode Island).

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT.**

The Court should overrule the single objection in this case filed by participating Class Member Matthew Amaral and grant final approval of the collective/class settlement. A true and correct copy of Mr. Amaral's objection letter is attached as **Exhibit 1** and is Docket No. 103.

The two issues raised by Mr. Amaral were already considered in the parties' negotiated settlement. In particular, Mr. Amaral's concerns that (1) training time and (2) time attending Group Savings Plus ("GSP") account related activities were not considered in the settlement are completely unfounded. <u>These were two intensely litigated areas</u>, with time spent on GSP activities being one of the most hotly contested issues in the entire case. (Affidavit of Michael A. Starzyk, ¶¶ 8-11.)

Additionally, Mr. Amaral's was the only objection filed by any of the 2,737 participating Class Members. (Docket No. 104, Affidavit of Anya Verkhovskaya, ¶¶ 34 & 23.) The Class Members have given their resounding approval of the Settlement by claiming 95.50% of the

1

Class Settlement Amount, with 2,737 out of the 3,250 eligible Class Members filing Claim Forms (84% participation rate). The settlement should not be destroyed by a single objector[1] – particularly where, as here, the lone objector's concerns of unconsidered time were, in fact, heavily litigated.

The Court has already preliminarily determined the settlement is fair, adequate and reasonable. This fact is not changed by Mr. Amaral's objection, which begins by noting that he does "not plan on addressing the Court on May 20, 2010," and is limited to objecting to how the overtime hours were calculated for <u>him alone</u> (i.e., "I hereby object in writing that the hours calculated by Liberty Mutual Insurance Company <u>for N0110413</u>[2] <u>Matthew Amaral</u> is underestimated and incorrect"). (Exhibit 1, emphasis added.) This is especially true when there is overwhelming evidence that training and GSP activity time were considered in the parties' settlement.

## II.   TRAINING TIME WAS CONSIDERED.

The main thrust of Mr. Amaral's objection is that for certain work activities (during his training and GSP-related activities) he was not "logged into Liberty Mutual's proprietary software," and he erroneously presumes that such non-computer working hours were not "included or considered" in the negotiated settlement. (Exhibit 1 ("The following hours could not have been included or considered because N0110413 [his PIN] was not logged into Liberty Mutual's proprietary software for the following hours . . . .").)

---

[1] Pursuant to Section 8.2 of the parties' Joint Stipulation of Settlement and Release of Class Claims ("Settlement Agreement"), "[o]nly <u>Participating</u> Settlement Class Members and Rule 23/NY Settlement Class Members who have <u>not</u> submitted a request for exclusion from the Settlement may submit an objection and/or be heard at the Final Approval Hearing." (Emphasis added.) A copy of the parties' Settlement Agreement is submitted as Exhibit 1 to Plaintiffs' Unopposed Motion for Final Approval of FLSA Collective/Class Action Settlement.

[2] Each Liberty Mutual Sales Representative is assigned a personal identification number during their tenure with the Company, which is commonly referred to as the "N" number because these monikers always began with the letter "N."

2

A.     **The Complaint Specifically Seeks Back Wages for Training Time.**

Plaintiffs' First Amended Complaint (filed October 10, 2008 near the very beginning of this lawsuit) specifically alleged that Plaintiffs were due additional wages for time spent attending mandatory training programs and meetings. (Docket No. 3, *Plaintiffs' First Amended Complaint and Request for Collective Action Certification*, ¶ 30 ("Additionally, while Liberty Mutual requires its Sales Representatives to attend training programs and meetings outside of regular business hours, the Company did not pay Plaintiffs for these additional working hours.").) Thus, the Named Plaintiffs argued since the outset of this case that they are entitled to additional back wages for time spent attending mandatory training programs and meetings.

B.     **Sample Discovery Efforts Related to Training Time.**

The following is a mere *sampling* of the parties' extensive discovery efforts that related to training time:

- Forms of the term "train" were mentioned <u>thirty-one times</u> in both the December 11, 2008 deposition of lead Plaintiff Jason Schmitz (from Texas) and the December 10, 2008 deposition of Named Plaintiff Thomas Young (from Colorado). True and correct copies of the relevant word index pages from Mr. Schmitz's and Mr. Young's deposition transcripts are attached as, respectively **Exhibits 2 and 3**.

- In Plaintiffs' depositions of Nickolas Pirozzi (from Georgia) and Darren Guido (from New York), forms of the term "train" were mentioned, respectively, <u>thirty-four and sixty-two times</u>. True and correct copies of the relevant word index pages from Mr. Pirozzi's and Mr. Guido's deposition transcripts are attached as **Exhibits 4 and 5**.

- Numerous Requests for Production propounded by Plaintiffs to Liberty Mutual *specifically* sought training-related documents -- a list of these requests is attached as **Exhibit 6**.

There can be no question that Plaintiffs pursued additional compensation for training hours in their pleadings and discovery efforts in this action, and that, by necessity, this issue was considered in the parties' negotiations of a settlement.

### III. GSP ACTIVITIES WERE A KEY AREA OF DISPUTE.

#### A. The Complaint Specifically Seeks Back Wages for GSP-Related Time.

Plaintiffs' First Amended Complaint also addresses Mr. Amaral's second objection that his time spent on weekends attending GSP account related activities was not considered in this action. The Complaint specifically alleged that "Liberty Mutual also required Plaintiffs to work mandatory overtime on weekends, such as promoting Liberty Mutual's insurance products to specific customer(s), without additional compensation for this working time." (Docket No. 3, *Plaintiffs' First Amended Complaint and Request for Collective Action Certification*, ¶ 29.)

#### B. Liberty Mutual's Emphasis on GSP Activities.

The time spent on GSP-related activities (in particular) was amongst the most hotly contested issues in the litigation, because one of Liberty Mutual's principal defenses is that it properly classified its Sales Representatives as exempt from overtime pay requirements under the "outside salesperson" exemption in part due to their time outside the office on GSP-related and other community activities. For example, in Liberty Mutual's brief opposing the Named Plaintiffs' Motion for Conditional Certification), the Company argued:

> "Liberty classified its sales representatives as outside salespersons, and expects its sales representatives to be out of the office, building relationships and developing business in the manner that best suits their community and individual styles.[3] For example, Liberty expects sales representatives to find and grow Group Savings Plus ('GSP') accounts,[4] develop referral sources such as mortgage brokers, auto dealerships, realtors, and other business and community contacts, and form personal relationships with customers that will lead to greater retention and cross-selling. Thus, the company repeatedly emphasizes in both formal and informal training sessions the importance of leaving the office and making personal contact

---

[3] Footnote citing to 12 witness Declarations submitted by Liberty Mutual (Docket No. 22, p. 7, n.4), and Liberty Mutual eventually produced over 60 witness Declarations (mostly from current Sales Representatives) in this action to dispute Plaintiffs' claims.

[4] Footnote stating: "A GSP account is a contractual relationship with a business or other organization, such as an alumni group, whereby LM provides insurance products to employees/members at discounted prices." (Docket No. 22, p. 7, n.5.)

with customers."

(Docket No. 22, *Defendant Liberty Mutual Insurance Company's Opposition to Plaintiffs' Motion for Conditional Certification as a Collective Action*, p. 7.)

In this same brief, Liberty Mutual included an over five-page table that quoted excerpts from its witness Declarations that emphasized the time spent outside the office on GSP and other community-related activities. (*Id.*, pp. 9-14.) A copy of these pages of Liberty Mutual's brief is attached as **Exhibit 7**. Thus, it was Liberty Mutual who banged the drum on contending that its sales representatives spend a lot of time outside the office on GSP-related activities.

C.   **Sample Discovery Efforts Related to GSP Activities.**

Because the nature and extent of time spent on GSP-related and other "outside" activities was one of the biggest areas of dispute between the parties, it was also a big issue in discovery. The following is a mere sampling of the parties' extensive discovery efforts that related to GSP activities:

- The term "GSP" was mentioned forty-five times in the deposition of Plaintiff Schmitz. (Exhibit 2.)

- The term "GSP" was mentioned forty-two times in the deposition of Plaintiff Young. (Exhibit 3.)

- In Plaintiffs' depositions of Nickolas Pirozzi and Darren Guido, the term "GSP" was mentioned, respectively, eighty-five and eighty times. (Exhibits 4-5.)

- Numerous Requests for Production propounded by Plaintiffs to Liberty Mutual *specifically* sought GSP-related documents -- a list of these requests is attached as **Exhibit 8**.

In sum, both of the issues of Mr. Amaral's concern were clearly litigated in this case and factored into the parties' settlement negotiations. And there is no basis for singling Mr. Amaral out for special treatment to be awarded any additional money besides the over $15,500 he will receive pursuant to the parties' settlement agreement and payment formula that is applicable to

all other participating Class Members.

### IV. PUBLIC POLICY STRONGLY FAVORS OVERRULING MR. AMARAL'S OBJECTION.

Well-established precedent makes clear that settlements are strongly favored, particularly in class action suits. *Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977); *Florida Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960); *In re PaineWebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("'[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class actions suits.'"); *Schwartz v. TXU Corp.*, 2005 WL 3148350 *23 (N.D. Tex. Nov. 8, 2005).

As discussed in substantial detail in Plaintiffs' Unopposed Motion for Preliminary Approval of FLSA Collective/Class Action Settlement filed in December 2009 (Docket No. 91), the parties engaged in extensive settlement negotiations, which involved extended discussions on the merits of the parties' respective positions, as well as negotiations over the settlement amount. Liberty Mutual ultimately agreed to pay up to $33,750,000.00 to settle.

The settlement was preceded by extensive discovery and law and motion briefings.  (*See* Docket No. 91.)  And it was followed by a resounding vote of confidence in the Class, with an extraordinarily high percentage of potential claimants returning Claim Forms to participate in the settlement.  Only one Class Member has objected, and only one has opted out.  The most democratic measure of a settlement's "fairness" is the extent to which Class Members object, and through their objections point to a settlement's unfairness.  *See, e.g., Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5,400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King*

*Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) ("The very fact that [the objector] alone actively stands on the 'outside' opposing the settlement agreement is of striking significance and import."). Mr. Amaral's lone objection should be overruled.

V.   **CONCLUSION.**

For the foregoing reasons, Plaintiffs request that the Court overrule the single objection by participating Class Member Matthew Amaral and grant final approval of the Settlement Agreement.

Respectfully submitted,

    /Michael A. Starzyk/
**Michael A. Starzyk**
Attorney-in-Charge
Texas Bar No. 00788461
Southern District of Texas Bar No.16926
**April L. Walter**
Texas Bar No. 24052793
Southern District of Texas Bar No. 713287

**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

**J.P. Hughes, Jr.**
Texas Bar No. 24048965
Southern District of Texas Bar No. 943894

**J.P. HUGHES & COMPANY**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [662] 234-6042

**Russ M. Herman**
Eastern District of Louisiana Bar No. 6819
**Stephen J. Herman**
Eastern District of Louisiana Bar No. 23129
**James C. Klick**
Eastern District of Louisiana Bar No. 7451
**John S. Creevy**
Eastern District of Louisiana Bar No. 30879

**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113
T: [504] 581-4892
F: [504] 561-6024

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      I certify that on May 10, 2010, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Douglas R. Hart
    Geoffrey D. DeBoskey
    Jason D. Bosch
    Dana Finkey
    Katherine A. Roberts
    Sheppard, Mullin, Richter & Hampton, L.L.P.
    333 South Hope Street, 48th Floor
    Los Angeles, CA. 90071-1448
    Facsimile:  213-620-1398

    Teresa S. Valderrama
    Jackson Lewis L.L.P.
    Wedge International Tower
    1415 Louisiana, Suite 3325
    Houston, TX 77002
    Facsimile:  713-650-0405

                                /Michael A. Starzyk/
                                  **Michael A. Starzyk**