## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JASON SCHMITZ**, *et al.*, | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF COMMON FUND ATTORNEYS' FEES, LITIGATION EXPENSES AND NAMED PLAINTIFF SERVICE PAYMENTS PURSUANT TO FLSA COLLECTIVE/CLASS ACTION SETTLEMENT

**Michael A. Starzyk**
Attorney-in-Charge
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380

**J.P. Hughes, Jr.**
**J.P. HUGHES & CO. ATTORNEYS**
1300 Access Road, Suite 100
Oxford, Mississippi 38655

**Russ M. Herman**
**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113

*ATTORNEYS FOR PLAINTIFFS*

## **TABLE OF CONTENTS**

COVER PAGE..................................................................................................... i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

TABLE OF EXHIBITS ......................................................................................v

INTRODUCTION ...............................................................................................1

I.     THE REQUESTED FEE AWARD SHOULD BE APPROVED.......................................3

     A.    Important Public Policies Are Advanced When Class Counsel Are Compensated Commensurate With The Risks Inherent In Class Actions ...................................3

     B.    The Percentage-Of-The-Recovery Method Is Appropriate For Common Fund Settlements ........................................................................................4

     C.    Exceptional Results Were Achieved On Behalf Of The Class .............................6

     D.    The Lodestar Cross-Check...................................................................9

          1.  Reasonable hours expended................................................................9

          2.  Reasonable hourly rates charged ......................................................10

          3.  The requested fees are below those in comparable settlements.......................11

          4.  The participating class members consented to a 25% fee...............................12

          5.  The *Johnson* factors ......................................................................12

II.    THE REQUESTED COST AWARD SHOULD BE APPROVED..................................13

III.   THE CLASS REPRESENTATIVE ENHANCEMENTS SHOULD BE APPROVED....13

CONCLUSION...................................................................................................14

CERTIFICATE OF CONFERENCE...................................................................16

CERTIFICATE OF SERVICE ...........................................................................16

# TABLE OF AUTHORITIES

## Cases

*Blum v. Stenson,*
    465 U.S. 886 (1984) ....................................................................4

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ....................................................................4

*Collins v. Sanderson Farms, Inc.,*
    568 F. Supp. 2d 714 (E.D. La. 2008)...........................................9

*Dehoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................

*Deposit Guar. Nat'l Bank v. Rope,*
    445 U.S. 326 (1980) ...................................................................14

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) .............................................5

*In re Enron Corp.,*
    586 F. Supp. 2d 732 (S.D. Tex. 2008) (Harmon, J.) ..........4, 5, 9, 10, 11, 12, 13

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.3d 714 (5th Cir. 1974) ......................................................12

*Mashburn v. National Healthcare, Inc.,*
    684 F. Supp. 679 (M.D. Ala. 1988) ..............................................3

*Prater v. Commerce Equities Mgmt. Co.,*
    2008 WL 5140045 (S.D. Tex. 2008) ...........................................10

*Perdue v. Kenny A.,*
    ____ U.S. ___, 2010 WL 1558980 (April 21, 2010) ....................5, 6

*Saizan v. Delta Concrete Prods. Co.,*
    448 F.3d 795 (5th Cir. 2006) ......................................................9, 13

*Shaw v. Toshiba America Information Systems,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ...........................................4

*Singer v. City of Waco,*
    324 F.3d 813 (5th Cir. 2003) ......................................................13

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................11

**<u>Secondary Sources</u>**

Newberg & Conte, NEWBERG ON CLASS ACTIONS ..........................................................5

## <u>APPENDIX OF EXHIBITS</u>

Joint Stipulation of Settlement and Release of Class Claims ...........................................**Exhibit 1**

Supplemental Memorandum of Agreement (Re *Gonzalez* Litigation) ............................**Exhibit 2**

Affidavit of Michael A. Starzyk  ...................................................................................**Exhibit 3**

Declaration of John C. Coffee, Jr. ..................................................................................**Exhibit 4**

*Texas Lawyer* June 29, 2009 Billing Rate Survey  ..........................................................**Exhibit 5**

Settlement in *In re AXA Wage and Hour Litigation*  .........................................................**Exhibit 6**

Settlement in *Basile v. A.G. Edwards & Sons, Inc.*  .........................................................**Exhibit 7**

Settlement in *Poole v. Merrill Lynch, Pierce, Fenner & Smith Inc.* ...............................**Exhibit 8**

Settlement in *Steinberg v. Morgan Stanley & Co. Inc.*  ....................................................**Exhibit 9**

Settlement in *Gerlach v. Wells Fargo & Co.*  ..................................................................**Exhibit 10**

Settlement in *Glass v. UBS Financial Services, Inc.*  .......................................................**Exhibit 11**

Settlement in *In re Wachovia Wage and Hour Litigation*  ...............................................**Exhibit 12**

Settlement in *Kaufmann v. Commerce Bancorp, Inc.*  .....................................................**Exhibit 13**

Settlement in *Stanfield v. First NLC Financial Services, LLC*  ........................................**Exhibit 14**

Settlement in *Westerfield v. Washington Mutual Bank*  ...................................................**Exhibit 15**

Settlement in *Winzelberg v. Liberty Mutual Insurance Company* ...................................**Exhibit 16**

Settlement in *Burns v. Merrill Lynch, Pierce, Fenner & Smith Inc.*  ..............................**Exhibit 17**

Settlement in *Takacs v. A.G. Edwards & Sons, Inc.*  .......................................................**Exhibit 18**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JASON SCHMITZ, *et al.*,** | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF COMMON FUND
ATTORNEYS' FEES, LITIGATION EXPENSES AND NAMED PLAINTIFF SERVICE
PAYMENTS PURSUANT TO FLSA COLLECTIVE/CLASS ACTION SETTLEMENT**

**INTRODUCTION**

Class Counsel and Plaintiffs move for final approval of the common fund attorneys' fees and cost reimbursements, as well as the class representative enhancement payments, which were negotiated as part of the Settlement Agreement (for which final approval is concurrently sought[1]) and preliminarily approved by the Court. The twenty-five percent (25%) fee request from the <u>claimed</u> funds is supported by Class Counsel having created a $33.75 million common fund, despite substantial challenges to both class certification and on the merits. And the Class Members have given their resounding approval, with 84% (2,737 out of 3,250) opting to join the settlement and claim over 95.5% of the Class Settlement Amount[2] ($24,102,651.30).[3] Only one Class Member has objected, and only one has opted out.[4] The settlement's average net value per *participating* Class Member is approximately $8,806 and the average net value per *eligible* Class

---

[1] *See also* Plaintiffs' Unopposed Motion for Final Approval of FLSA Collective/Class Action Settlement and Plaintiffs' Response to Objection by Participating Class Member Matthew Amaral to FLSA Collective/Class Action Settlement, both filed concurrently.
[2] Ex. 1, Settlement Agreement, §1.10 (defining "Class Settlement Amount" as "$33,750,000.00 minus attorneys' fees and Named Plaintiff Service Payments").
[3] Docket No. 104, Verkhovskaya Affidavit, ¶ 40.
[4] *Id.*, ¶¶ 20-24.

1

Member was approximately $7,767, which significantly outperforms comparable FLSA settlements in the financial services industry.[5]

**In giving their emphatic approval of the Settlement, the Class implicitly approved the 25% fee request when they opted-in to the settlement, as the Claim Forms explained their estimated individual settlement payments net of a 25% fee recovery and explicitly stated that Class Counsel was requesting this amount.** (*See* Docket Nos. 91-2, 101-4 & 101-5.) No Class Member has objected to the proposed award of attorneys' fees, litigation expenses, or Named Plaintiff service payments. And though the Settlement provides for a 25% fee, it is noteworthy that over 160 class members who consented to join this lawsuit *before* the Settlement was reached each executed Representation Agreements with Class Counsel that provided for a 33.3% fee, and the original six Named Plaintiffs had approved a 40% fee.[6] Thus, *all* of the Participating Class Members have consented to a 25% fee recovery, and some consented to higher amounts.

Indeed, the Class Members here are *significantly better compensated* than those who benefited from similar settlements. *See generally,* Ex. 4, Declaration of John C. Coffee, Jr. A lodestar cross-check further confirms that the fee award falls well within the range of reasonableness, and is in line with (or, in fact, lower than) comparable settlements that negotiated court-approved fee awards.

Class Counsel and Plaintiffs respectfully request that the Court approve the $8,034,217.10 fee request; up to $198,625.18 in cost reimbursements (which includes the costs of settlement administration charged by the Claims Administrator); and a total of $95,000 in service enhancement payments to eight Named Plaintiffs (Schmitz at $25,000; Barouh,

---

[5] *See generally,* Ex. 4, Coffee Declaration.
[6] Ex. 3, Starzyk Affidavit, ¶¶ 36-37.

Copeland-Nava, and Young at $15,000 each; Winter at $10,000; and Bailey, Hargraves, and Jones at $5,000 each) as additional compensation for their contributions to their fellow Class Members and consideration for their General Releases.   The Court preliminarily approved these requests before the claims administration process by Order entered December 16, 2009,[7] and the results of the administration process have further highlighted the remarkably good outcome that counsel has obtained for the Class.

## I.      THE REQUESTED FEE AWARD SHOULD BE APPROVED.

### A.      Important Public Policies Are Advanced When Class Counsel Are Compensated Commensurate With The Risks Inherent In Class Actions.

Class action counsel often perform statutory enforcement functions that government entities lack the resources to undertake, or that wronged workers lack the ability to pay for, and in so doing, class counsel perform an important public function.   *See Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980) ("The financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the 'private attorney general' for the vindication of legal rights; obviously this development has been facilitated by Rule 23. . . . Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, persons may be without any effective redress unless they employ the class action device.").

It is a basic law of economics that if class action counsel is not compensated commensurate with the risks inherent in litigating class actions, that effective representation for plaintiffs in these cases will disappear.   *See Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (acknowledging the "economic reality that in order to encourage 'private attorney general' class actions brought to enforce . . . laws on behalf of persons with

---

[7]Docket No. 99.

small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid").

While class actions do provide substantial benefits beyond those to the litigants and are essentially self-financing, it is the benefit to the class members that is the starting point for any assessment of a request that a court give final approval to attorneys' fees negotiated as part of a class action settlement.  Class Counsel litigated this case despite the entirely real prospect that no class would be conditionally certified or would be later decertified; or, if certification were obtained and held, that dispositive motions would extinguish any chance of a settlement or judgment in the class' favor.  Class Counsel fought through considerable legal and evidentiary challenges to bring immediate, substantial monetary relief to the class – relief that is substantially better than the average net individual settlement payments obtained in comparable settlements.

**B.     The Percentage-Of-The-Recovery Method Is Appropriate For Common Fund Settlements.**

The Supreme Court has endorsed using the percentage method in common fund cases. *Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from that fund as a whole."); *In re Enron Corp.*, 586 F. Supp. 2d 732, 749 (S.D. Tex. 2008) (Harmon, J.) ("Indeed, numerous district courts in this Circuit have applied the percentage method alone in awarding attorneys' fees in common fund cases . . . ."); *Shaw v. Toshiba America Information Systems*, 91 F. Supp. 2d 942, 966-67 (E.D. Tex. 2000) (listing 20 district court cases in the Fifth Circuit utilizing the percentage approach).

4

Using the percentage method, a court decides if a certain percentage of the total recovery is a reasonable fee. *In re Enron Corp.*, 586 F. Supp. 2d at 766-79. The court considers several factors, including:

(1)     The level of success achieved;
(2)     Attorneys' fees awarded in similar cases (i.e., whether the requested fee is higher or lower than similar cases);
(3)     The length and difficulty of the litigation;
(4)     The level of risk faced at the beginning of the suit;
(5)     The strength of defense counsel; and
(6)     Whether the fee agreement was negotiated at arm's length by parties of similar bargaining power.

*Id.* at 766-79. Historically, attorney fee awards have ranged from between 20-50% of the total common fund created and average around one-third (33.3%) of the recovery. Newberg & Conte, NEWBERG ON CLASS ACTIONS § 14.6 (3d ed. 1992); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that fee awards in common fund cases "almost always hover[] around 30% of the fund created by the settlement").[8]

The Supreme Court's decision in *Perdue v. Kenny A.*, ____ U.S. ___, 2010 WL 1558980 (April 21, 2010) involved a fee-shifting case (not a common fund settlement), and thus, does not apply to the present Motion.[9] There was no monetary recovery at issue in *Perdue* (rather injunctive and declaratory relief under 42 U.S.C. § 1983), so there was no means to apply the percentage-of-recovery method. Moreover, the Court emphasized other circumstances that are not at issue in this action, including the Court's concern that the fees would be paid "in effect by state and local taxpayers" and that "money used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Id.* at * 16. Here, a private corporate defendant has voluntarily and knowingly agreed, and does not oppose, the attorneys' fees sought

---

[8] Lower percentage fee awards are typically associated with so-called "mega fund" cases with common funds in excess of $100 million.
[9] *See* Ex. 4, Coffee Declaration, ¶ 26.

by Class Counsel. And importantly, this is an opt-in settlement case where class members were informed in their Notices of the fees sought by class counsel and affirmatively approved them by joining the settlement.[10]

### C.      Exceptional Results Were Achieved On Behalf Of The Class.

This settlement's average net value per participating Class Member is approximately $8,806.[11] By this common measure of wage and hour class action settlements, the instant settlement compares very favorably with other recent settlements of misclassification claims in the financial services industry, including:

- Exhibit 7, *In re AXA Wage and Hour Litigation*, N.D. Cal. Case No. C-06-4291($827 average net per *participating* class member; $523 average net per *eligible* class member; awarded fees of 25% of *common* fund, or 26.24% of *claimed* funds);

- Exhibit 8, *Basile v. A.G. Edwards & Sons, Inc.*, S.D. Cal. Case No. 08-CV-0338 ($1,199 average net per *participating* class member; $1,029 average net per *eligible* class member; awarded fees of 25% of *common* fund, or 36% of *claimed* funds);

- Exhibit 9, *Poole v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, D. Or. Case No. CV-06-1657 ($1,483 average net per *participating* class member; awarded fees and costs of 25% of *common* fund[12]);

- Exhibit 10, *Steinberg v. Morgan Stanley & Co., Inc.*, S.D. Cal. Case No. 3:06-CV-02628 ($2,187 average net per *participating* class member; $1,831 average net per *eligible* class member; awarded fees of 25% of *common* fund, or 29% of *claimed* funds);

- Exhibit 11, *Gerlach v. Wells Fargo & Co.*, N.D. Cal. Case No. 05-00585 ($2,075 average net per *participating* class member; awarded fees of 25% of *common*

---

[10] The Court was also concerned that there were no identifiable comparable cases to which an objective comparison could be made to the *Perdue* case results; instead, the record consisted of only the trial court's "impressionistic basis" for comparing the performance of counsel to "unnamed prior cases." *Id.* at *15. Here, by contrast, Class Counsel has submitted several comparable cases and other empirical data to objectively demonstrate how its performance in this action substantially outperformed the results of FLSA cases. *See generally*, Ex. 4, Coffee Declaration & Exhibits 6-18.

[11] *See,* Docket No. 104, Verkhovskaya Affidavit, ¶ 40 (calculated as the $24,102,651.30 in claimed funds divided by the 2,737 claimants).

[12] Data was not available to calculate fees relative to claimed funds.

6

fund[13]);

- Exhibit 12, ***Glass v. UBS Financial Services, Inc.***, N.D. Cal. Case No. C-06-4068 ($3,162 average net per *participating* class member; $2,542 average net per *eligible* class member; awarded fees of 25% of *common* fund, or 38.74% of *claimed* funds);

- Exhibit 13, ***In re Wachovia Wage and Hour Litigation***, C.D. Cal. Case No. 07-1807 ($2,605 average net per *participating* class member; awarded fees of 25% of *common* fund[14]);

- Exhibit 14, ***Kaufmann v. Commerce Bancorp, Inc.***, D. N.J. Case No. 06-CV-04664 ($2,894 average net per *participating* class member; $2,647 average net per *eligible* class member; awarded fees of 32.50% of *common* fund, or 48.46% of *claimed* funds);

- Exhibit 15, ***Stanfield v. First NLC Financial Services***, N.D. Cal. 06-3892 ($3,135 average net per *participating* class member; awarded fees of 33.33% (minus costs) of *common* fund[15]);

- Exhibit 16, ***Westerfield v. Washington Mutual Bank***, E.D. NY Case No. 06-cv-02817 ($5,229 average net per *participating* class member; awarded fees of 30% of *common* fund);

- Exhibit 17, ***Winzelberg v. Liberty Mutual Insurance Company***, C.D. Cal. Case No. CV-07-460 ($6,557 average net per *participating* class member; $6,115 average net per *eligible* class member; awarded fees of 33.33% of *common* fund, or 41% of *claimed* funds);

- Exhibit 18, ***Burns v. Merrill Lynch, Pierce, Fenner & Smith, Inc.***, N.D. Cal. Case No. 04 4135 ($136.68 net average available payout *per month* compared to $199.14 net average available payout per month obtained in this action[16]; awarded fees of 25% of *common* fund, or 35% of *claimed* funds);

- Exhibit 19, ***Takacs v. A.G. Edwards & Sons***, S.D. Cal. Case No. 04-cv-1852 ($127.29 net average available payout *per month* compared to $199.14 net average available payout per month obtained in this action[17]; awarded fees of 28.17% of *common* fund, or 32.10% of *claimed* funds).

---

[13] See footnote 12.
[14] See footnote 12.
[15] See footnote 12.
[16] *See*, Ex. 4, Coffee Declaration, ¶¶ 11-12.
[17] *Id.*

The Class Members' <u>average recovery substantially exceeds</u> that of the class members in these similar, settled cases.  The *Winzelberg* case involved the <u>same</u> defendant and job position (i.e., Personal Markets Sales Representative) as the present action.  And in the *Winzelberg* case, plaintiff and class counsel confined their request for collective treatment to California.  Thus, they did not, as was done in the present action, pursue <u>nationwide</u> class treatment.  Here, while carrying the <u>greater risk</u> associated with a national class action, Class Counsel obtained a significantly better result, with average net settlement payments over 34% greater than those obtained in *Winzelberg*.  (Ex. 4, Coffee Declaration, ¶ 13.)  *Winzelberg*'s plaintiff and class counsel also did not advance any claim for unpaid straight time hours between 37.5 and 40, as Plaintiffs alleged here.

Not surprisingly, therefore, the Class Members' response to the settlement has been overwhelmingly positive.  (*See generally* Ex. 4, Declaration of John C. Coffee, Jr., ¶¶ 14-19, for further discussion concerning the exemplary results achieved by Class Counsel in this case, including concerning (1) the fact that Class Counsel in this case have outperformed the average participation rate in FLSA collective actions by 5 ½ times (or by over 6 times, if one looks to the total financial payout); and (2) the fact that for four out of six potential damage outcomes in this case, the settlement exceeded the maximum damages.)

These comparable FLSA settlements in the financial services industry also reveal that the requested fee in this case is substantially <u>lower</u> than the fees awarded in similar cases (e.g., of 25% or more of the <u>common</u> fund, as opposed to the <u>claimed</u> funds).  (Ex. 4, Coffee Declaration, ¶¶ 20-21.)  Plaintiffs' Motions for Preliminary and Final Approval of the Settlement address in considerable detail the high level of risk faced by Class Counsel in this action, the superior reputation of defense counsel in FLSA matters, and the extensive, arm's length negotiations that

culminated in Class Counsel achieving an extraordinarily favorable common fund for the benefit of the Class.

### D.    The Lodestar Cross-Check.

Some courts in the Fifth Circuit "cross-check" the percentage-of-recovery method by an assessment of the lodestar method.  *In re Enron Corp.,* 586 F. Supp. 2d at 751-52.  Under the lodestar method, the court initially determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers.  *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006).  Then the court must multiply the reasonable hours by the reasonable hourly rates to reach the "lodestar."[18]  *Id.*  Once the lodestar is calculated, a lodestar cross-check is performed by dividing the proposed fee award by the lodestar, resulting in the "lodestar multiplier," and then the court juxtaposes this multiplier against the multipliers used in comparable cases.  *In re Enron Corp.*, 586 F. Supp. 2d at 752.

#### 1.    *Reasonable hours expended.*

Plaintiffs seeking attorneys' fees "are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment."  *Saizan,* 448 F.3d at 799.  This requires "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."  *Id.*

Under the Representation Agreement with the Named Plaintiffs, Class Counsel was to receive 40% of any recovery from Defendant.[19]  Under the Representation Agreement with the Early Opt-In Plaintiffs (i.e., the over 160 additional plaintiffs who submitted their consents to join this action before the settlement was reached and claims administration process began),

---

[18] If class counsel (as here) has agreed how they will split an attorneys' fees award, the court does not have to apportion the fees among them, and such an agreement should be respected.  *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 729 (E.D. La. 2008).
[19] Ex. 3, Starzyk Affidavit, ¶ 36.

9

Class Counsel was to receive 33⅓% of any recovery from Defendant.[20]  According to the terms of the negotiated settlement, Class Counsel will receive a reduced contingency interest of only 25% of the <u>claimed</u> funds.  Thus, the negotiated settlement already reduces Class Counsel's fee recovery.  Here, the Plaintiffs' Attorney-in-Charge, Michael Starzyk, also reviewed all of the billing entries for this matter and exercised billing judgment to write off any time he found to be unproductive, excessive, or redundant.[21]  Class Counsel has lodged a copy of its complete billing statement for *in camera* review to spot check individual time entries.  *See In re Enron Corp.*, 586 F. Supp. 2d at 753.

### 2.     *Reasonable hourly rates charged.*

The court determines the reasonable hourly rate by looking at the "prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community."  *Prater v. Commerce Equities Mgmt Co.*, 2008 WL 5140045, * 3 (S.D. Tex. 2008).  The *Texas Lawyer* publishes an annual billing rate survey each June.  A copy of the June 29, 2009 survey is attached as Exhibit 6.  Class Counsel commenced work on this matter in September 2008.[22]  The lead attorneys, Michael Starzyk of Starzyk & Associates, P.C. and Jay Hughes of J.P. Hughes & Company, both billed at the rate of only $350 on this case, which is significantly ***below*** the $393 per hour average market rate for equity partners in Houston in 2008 and 2009.[23]

The four other Houston-based attorneys who worked on this case (Patricia G. Chapman currently in her 27th year of practice; April L. Walter and Seth J. Hinkley both currently in their 14th year of practice; and Alan M. Bush currently in his 7th year of practice) were also billed ***at or***

---

[20] *Id.,* ¶ 37.
[21] *Id.,* ¶ 56.
[22] *Id.,* ¶ 48.
[23] *Id.,* ¶¶ 49-50; Ex. 5, Billing Rate Survey.

*below* prevailing market rates.  For example, Mr. Bush was billed at only $225 per hour; whereas the *Texas Lawyer* survey shows that comparable associate attorneys in Houston billed at $248 in 2009 and $242 in 2008.[24]  Mr. Hinkley was billed at only $250 per hour, which is the going rate for attorneys with <u>half</u> his years of experience.[25]  Ms. Chapman and Ms. Walter were both billed at $300 per hour, which is in line with the $287 and $291 rates in 2009 and 2008 for non-equity partners (i.e., experienced associates).[26]  Class Counsel have collected their billing rates for this case (and greater) for other matters.[27]

The Affidavit of Michael Starzyk includes a table that lists for each attorney their rank/experience level, billing rate, hours expended on this matter, and total "individual" lodestars.  To date, Plaintiffs have incurred over $1,810,888.75 in fees prosecuting their claims against Liberty Mutual, all of which fees are reasonable and necessary.

### 3.  *The requested fees are below those in comparable settlements.*

When Class Counsel's cumulative lodestar is divided into its requested fee award, the resulting multiplier would be 4.4.  (Ex. 4, Coffee Declaration, ¶ 22.)  In performing a lodestar cross-check, the court considers the multipliers used in comparable cases.  *See In re Enron Corp.,* 586 F. Supp. 2d at 752.  In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002), the Ninth Circuit performed a survey of multipliers and found "a range of 0.6-19.6, with most (20 of 24, or 83%) from 1.0 and 4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range."  Much additional data can be cited for the proposition that a multiplier of 4.4 is not unusual and has been regularly awarded, as cogently summarized by this Court in its decision in *In re Enron Corp.*, 586 F. Supp. 2d at 798-801.  (*See also* Ex. 4, Coffee Declaration, ¶ 22.)

---

[24] Ex. 3, Starzyk Affidavit, ¶ 51; Ex. 5, Billing Rate Survey.
[25] Ex. 3, Starzyk Affidavit, ¶ 52; Ex. 5, Billing Rate Survey.
[26] Ex. 3, Starzyk Affidavit, ¶ 51; Ex. 5, Billing Rate Survey.
[27] Ex. 3, Starzyk Affidavit, ¶ 55.

### 4.    *The participating class members consented to a 25% fee.*

This is effectively an opt-in class action.  In the normal Rule 23 opt-out class action, most commentators recognize that class members rarely opt out because they are rationally apathetic. (Ex. 4, Coffee Declaration, ¶ 23.)  By contrast, in an opt-in class action (such as this one), participating class members must affirmatively elect to participate after receiving a clear and simple notice of the settlement's terms.  (*Id.*)  The notices in this case told class members in plain and direct English that counsel would be seeking a 25% counsel fee, stating:

> "Plaintiffs' counsel intends to seek court approval for an award of attorneys' fees equal to 25% of the initial settlement calculation applicable to each Settlement Class Member who timely submits a Claim Form, and the estimated amount of your individual settlement payment listed in Number 2 above assumes that the Court grants Plaintiffs' counsel's request."

(Docket Nos. 91-2, 101-4 & 101-5.)

Indeed, the individualized Claim Forms even gave each class member's estimated individual settlement payments as a figure *net* of a 25% fee recovery.  (*Id.*; Docket No. 104, Verkhovskaya Affidavit, ¶ 8.)  Because the participating class member affirmatively elected to participate with specific knowledge of a 25% fee request, as Professor Coffee opines, "this Court has less reason to exercise a paternalistic supervision over their decision because it has much more reason to recognize that each participating class member made an informed decision."  (Ex. 4, Coffee Declaration, ¶¶ 23-24.)

### 5.    *The Johnson factors.*

The Court may also use the *Johnson* factors endorsed by the Fifth Circuit in performing a lodestar cross-check of a common fund fee award.  *See In re Enron Corp.*, 586 F. Supp. 2d at 753; *Johnson v. Georgia Highway Express, Inc.*, 488 F.3d 714, 717-18 (5th Cir. 1974).  Under Fifth Circuit precedent, the "most critical factor" is the "degree of success obtained."  *Singer v.*

*City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003); *Prater,* 2008 WL 5140045 at * 3; *Saizan,* 448 F.3d at 799; *In re Enron Corp.*, 586 F. Supp. 2d at 756-57.  As discussed above in Section I(C), in the Declaration of John Coffee, and in the Affidavit of Michael Starzyk, both the average net settlement payment and class participation level in this action have been extraordinary.

## II.    THE REQUESTED COST AWARD SHOULD BE APPROVED.

The negotiated settlement includes Liberty Mutual's agreement to pay the claims administration costs and reimburse Plaintiffs and Class Counsel for other litigation costs, capped collectively at $200,000.  The claims administration costs total $52,386.33 to date for A.B. Data, Ltd.'s work in administering an outstanding settlement claims process yielding an 84% participation rate with eligible Class Members claiming 95.5% of the common fund, and future claims administration costs are anticipated to range from $20,000-40,000.[28]  Adding Plaintiffs other recoverable litigation costs[29] totals just under the $200,000 cap for reimbursement by Liberty Mutual (specifically, $198,625.18).[30]

## III.    THE CLASS REPRESENTATIVE ENHANCEMENTS SHOULD BE APPROVED.

The Settlement Agreement provides for Named Plaintiff Service Payments totaling $95,000 to be paid to eight Plaintiffs (the "Service Plaintiffs") (specifically, Schmitz at $25,000; Barouh, Copeland-Nava, and Young at $15,000 each; Winter at $10,000; and Bailey, Hargraves, and Jones at $5,000 each), in exchange for <u>General</u> Releases.[31]  "'Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services

---

[28] Docket No. 104, Verkhovskaya Affidavit, ¶¶ 40-42.
[29] The Settlement Agreement defined Plaintiffs' recoverable expenses beyond the claims administration expenses to include:  "All taxable court costs; expert witness fees, including Plaintiffs' attorneys' fees expert and computer/e-discovery experts; mediator fees; reasonable coach-class travel expenses for travel to depositions, meetings with Liberty Mutual's counsel, and mediation; reasonable hotel accommodations for travel to depositions, meetings with Liberty Mutual's counsel, and mediation; reasonable transportation for travel to depositions, meetings with Liberty Mutual's counsel, and mediation; court reporter fees; videographer fees for videotaped depositions; courier fees; overnight delivery fees; and court filing fees."  (Ex. 1, Settlement Agreement, § 1.11.)
[30] Ex. 3, Starzyk Affidavit, ¶ 62.
[31] Ex. 1, Settlement Agreement, § 11.

they provide and the burdens they shoulder during litigation.'" *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.,* 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004)).   Throughout the litigation, the Service Plaintiffs assisted Class Counsel with the prosecution of this case and ably served their former and current co-workers as their representatives.[32]   They provided key documentation to Class Counsel, substantive responses to formal discovery, assistance with generating discovery requests to Liberty Mutual, and helped Class Counsel prepare for its depositions.[33]   Two of the Service Plaintiffs prepared for and testified at their own depositions.[34]   In addition to supplying key evidence and providing contact information for other witnesses, the Service Plaintiffs also reliably assisted with the analysis of information provided by Liberty Mutual in its pleadings and discovery.[35]

The Named Plaintiff Service Payments were explicitly addressed in the Notice and Claim Form packets that the Class received, and are reasonable additional consideration for their service as class representatives and their general releases.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel request that the Court approve the $8,034,217.10 fee request; up to $198,625.18 in cost reimbursements (which includes the costs of settlement administration charged by the Claims Administrator); and a total of $95,000 in service enhancement payments to eight Named Plaintiffs.

---

[32] Ex. 3, Starzyk Affidavit, ¶¶ 65-66.
[33] *Id.*
[34] *Id.*
[35] *Id.*

Respectfully submitted,

___/Michael A. Starzyk/_____
**Michael A. Starzyk**
Attorney-in-Charge
Texas Bar No. 00788461
Southern District of Texas Bar No.16926
**April L. Walter**
Texas Bar No. 24052793
Southern District of Texas Bar No. 713287

**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

**J.P. Hughes, Jr.**
Texas Bar No. 24048965
Southern District of Texas Bar No. 943894

**J.P. HUGHES & COMPANY**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [662] 234-6042

**Russ M. Herman**
Eastern District of Louisiana Bar No. 6819
**Stephen J. Herman**
Eastern District of Louisiana Bar No. 23129
**James C. Klick**
Eastern District of Louisiana Bar No. 7451
**John S. Creevy**
Eastern District of Louisiana Bar No. 30879

**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113
T: [504] 581-4892
F: [504] 561-6024

**ATTORNEYS FOR PLAINTIFFS**

15

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Defendant regarding this Motion and that Defendant does not oppose it.

/Michael A. Starzyk/
**Michael A. Starzyk**

## CERTIFICATE OF SERVICE

I certify that on May 10, 2010, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Douglas R. Hart
Geoffrey D. DeBoskey
Jason D. Bosch
Dana Finkey
Katherine A. Roberts
Sheppard, Mullin, Richter & Hampton, L.L.P.
333 South Hope Street, 48th Floor
Los Angeles, CA. 90071-1448
Facsimile: 213-620-1398

Teresa S. Valderrama
Jackson Lewis L.L.P.
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, TX 77002
Facsimile: 713-650-0405

/Michael A. Starzyk/
**Michael A. Starzyk**

16