# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JASON SCHMITZ,** *et al.*, | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF FLSA COLLECTIVE/CLASS ACTION SETTLEMENT

Michael A. Starzyk
Attorney-in-Charge
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380

**J.P. Hughes, Jr.**
**J.P. HUGHES & CO. ATTORNEYS**
1300 Access Road, Suite 100
Oxford, Mississippi 38655

**Russ M. Herman**
**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113

***ATTORNEYS FOR PLAINTIFFS***

# TABLE OF CONTENTS

COVER PAGE................................................................................................................. i

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

TABLE OF EXHIBITS ................................................................................................. vi

INTRODUCTION ...........................................................................................................1

I.      FACTUAL AND PROCEDURAL HISTORY ......................................................3

        A.      Commencement Of The *Schmitz* Action.................................................3

        B.      Plaintiffs' Motion and Defendant's Vigorous Opposition To Certification ............4

        C.      Preliminary Approval................................................................................4

        D.      Claims Administration ..............................................................................5

II.     THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL. ..............6

        A.      The Strength Of Plaintiffs' Case ..............................................................7

                1.      Risks to class certification ............................................................7

                2.      Risks to liability ...........................................................................8

        B.      The Risk, Expense, Complexity And Likely Duration Of Further Litigation ........8

        C.      The Risk Of Maintaining Class Action Status Throughout Trial ............9

        D.      The Amount Offered In Settlement ........................................................10

        E.      The Extent of Discovery Completed And The Stage Of The Proceedings...........10

        F.      Class Counsel..........................................................................................12

        G.      The Reaction Of The Class Members To The Settlement .......................12

        H.      The Settlement Negotiations Were Intense And Conducted At Arm's Length .....13

CONCLUSION..............................................................................................................14

CERTIFICATE OF CONFERENCE.............................................................................................15

CERTIFICATE OF SERVICE ...................................................................................................16

**Cases**

*American Eagle Ins. Co. v. King Resources Co.*,
    556 F.2d 471 (10th Cir. 1977) ........................................................................12

*Blackmon v. Brookshire Grocery Co.*,
    835 F.3d 1135 (5th Cir. 1988) ........................................................................8

*Braunstein v. Eastern Photographic Laboratories, Inc*,
    600 F.2d 335 (2d Cir. 1978) ..........................................................................2

*Brechler v. Qwest Communications Int'l, Inc.*,
    No. cv-06-00940-PHX-ROS (D. Ariz. March 17, 2009)...............................8

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................6, 12

*Dehoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ...............................................................12

*Dybach v. State of Fla. Dept. of Corrections*,
    942 F.2d 1562 (11th Cir. 1991) ....................................................................2

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ......................................................................6

*In re Corrugated Container Antitrust Litigation*,
    643 F.2d 195 (5th Cir. 1981) ........................................................................7

*In re Enron Corp. Securities & Derivative Litigation*,
    228 F.R.D. 541 (S.D. Tex. 2005) .................................................................6

*In re Texas EZ Pawn Fair Labor Standards Act Litig.*,
    2008 WL 2513682 (W.D. Tex. 2008) ..........................................................8

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
    517 F.3d 953 (9th Cir. 2009) ........................................................................8

*Kinney Shoe Corp. v. Vorhes*,
    564 F.2d 859 (9th Cir. 1977) ........................................................................2

*Miller v. Farmers Ins. Exchange*,
    481 F.3d 1119 (9th Cir. 2007) ......................................................................8

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982)...........................................6, 7

*Reynolds v. Nat'l Football League*,
    584 F.2d 280 (8th Cir. 1978) .........................................................................12

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)....................................................6

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .........................................................................8

## Regulations

29 C.F.R. § 778.114(a)...........................................................................................3

## Rules of Civil Procedure

FED. R. CIV. P. 23(e)(2) ........................................................................................6

## Secondary Sources

Newberg & Conte, NEWBERG ON CLASS ACTIONS ............................................6, 7, 8, 9, 13

Schneider & Stine, WAGE AND HOUR LAW: COMPLIANCE & PRACTICE.........................8

## APPENDIX OF EXHIBITS

Joint Stipulation of Settlement and Release of Class Claims ...........................................**Exhibit 1**

Supplemental Memorandum of Agreement (Re *Gonzalez* Litigation) .............................**Exhibit 2**

Affidavit of Michael A. Starzyk ...................................................................................**Exhibit 3**

Declaration of John C. Coffee, Jr. ...............................................................................**Exhibit 4**

*Texas Lawyer* June 29, 2009 Billing Rate Survey ........................................................**Exhibit 5**

Settlement in *In re AXA Wage and Hour Litigation* .......................................................**Exhibit 6**

Settlement in *Basile v. A.G. Edwards & Sons, Inc.* .......................................................**Exhibit 7**

Settlement in *Poole v. Merrill Lynch, Pierce, Fenner & Smith Inc.* ...............................**Exhibit 8**

Settlement in *Steinberg v. Morgan Stanley & Co. Inc.* ..................................................**Exhibit 9**

Settlement in *Gerlach v. Wells Fargo & Co.* ................................................................**Exhibit 10**

Settlement in *Glass v. UBS Financial Services, Inc.* ....................................................**Exhibit 11**

Settlement in *In re Wachovia Wage and Hour Litigation* .............................................**Exhibit 12**

Settlement in *Kaufmann v. Commerce Bancorp, Inc.* ...................................................**Exhibit 13**

Settlement in *Stanfield v. First NLC Financial Services, LLC* ......................................**Exhibit 14**

Settlement in *Westerfield v. Washington Mutual Bank* .................................................**Exhibit 15**

Settlement in *Winzelberg v. Liberty Mutual Insurance Company* ..................................**Exhibit 16**

Settlement in *Burns v. Merrill Lynch, Pierce, Fenner & Smith Inc.* ..............................**Exhibit 17**

Settlement in *Takacs v. A.G. Edwards & Sons, Inc.* .....................................................**Exhibit 18**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JASON SCHMITZ, *et al.*,** | § | **CIVIL ACTION NO. 4:08-cv-02945** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION REQUESTED** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF FLSA COLLECTIVE/CLASS ACTION SETTLEMENT**

**INTRODUCTION**

On December 16, 2009, the Court entered an Order granting preliminary approval of the parties' FLSA collective/class action settlement and directing the claims administration process. (Docket No. 99.)  The executed Joint Stipulation of Settlement and Release of Class Claims (the "Settlement Agreement") is attached as **Exhibit 1**[1] and sets forth in detail the settlement terms, including the agreement by defendant Liberty Mutual Insurance Company ("Liberty Mutual") to pay up to $33,750,000.00 to settle the Class Members' claims.

On January 8, 2010, the Court entered an Order approving a supplemental memorandum of agreement and revised notices to the New York class members, because the parties had reached an agreement with the plaintiffs in a putative class action filed in New York under New York law against Liberty Mutual (the "*Gonzalez* Litigation").  (Docket No. 102.)  Provided this Court grants final approval of the proposed Settlement in this case, it will result in the dismissal with prejudice of the *Gonzalez* Litigation as well.  The executed Supplemental Memorandum of

---

[1] To avoid filing duplicative copies of the same Exhibits, the Exhibits to this Motion are the same as those filed with Plaintiffs' Unopposed Motion for Award of Common Fund Attorneys' Fees, Litigation Expenses and Named Plaintiff Service Payments Pursuant to FLSA Collective/Class Action Settlement.

Agreement for the Settlement of the *Gonzalez* Litigation is attached as **Exhibit 2**.[2]  The Court's December 16, 2009 and January 8, 2010 Orders are referred to collectively herein as the "Preliminary Approval Orders."

Following entry of the Preliminary Approval Orders, each step necessary to effectuate the Settlement Agreement consistent with the Preliminary Approval Orders was accomplished.  The Notices were mailed to Class Members, who could choose whether to participate in, opt-out of, or object to the Settlement.  The Class Members' responses have been overwhelmingly positive.  Class Members have claimed 95.5% of the Class Settlement Amount[3] ($24,102,651.30), with 2,737 out of the 3,250 eligible Class Members filing Claim Forms (an 84% participation rate).  Only one Class Member has objected, and only one has opted out.  Accordingly, the Class Members have given their resounding approval of the Settlement.

This motion, unopposed by Defendant, seeks final approval of the Settlement Agreement.[4]  In evaluating the Settlement's overall fairness, a court must weigh certain factors, which, as set forth below, all favor final approval.

---

[2] The Settlement Agreement, thus, involves (1) the "Rule 23/New York Settlement Class," which includes those Sales Representatives who worked in New York and specifically includes:  (i) individuals with FLSA and New York state law claims, and (ii) individuals with only New York state law claims; and (2) the more general class for all Sales Representatives outside of New York, which involves only FLSA claims.  Unlike true class actions under Rule 23 in which litigation has a preclusive effect on the claims of a class of plaintiffs unless they elect to "opt out" and be excluded, a collective action under the FLSA requires plaintiffs to "opt in," or affirmatively to indicate their desire to participate in the action.  *E.g., Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 335-36 (2d Cir. 1978); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862-863 (9th Cir. 1977).  Those non-New Yorkers who did not "opt in" are not bound by the outcome of the litigation, and may choose to pursue their claims independently.  *Kinney, supra,* 564 F.2d at 862-63

[3] Ex. 1, Settlement Agreement, §1.10 (defining "Class Settlement Amount" as "$33,750,000.00 minus attorneys' fees and Named Plaintiff Service Payments").

[4] *See also* Plaintiffs' Unopposed Motion for Award of Common Fund Attorneys' Fees, Litigation Expenses and Named Plaintiff Service Payments Pursuant to FLSA Collective/Class Action Settlement, and Plaintiffs' Response to Objection by Participating Class Member Matthew Amaral to FLSA Collective/Class Action Settlement, both filed concurrently.

## I.  FACTUAL AND PROCEDURAL HISTORY.

### A.  Commencement Of The *Schmitz* Action.

A group of current and former Personal Markets Sales Representatives ("Sales Reps") filed this action in October 2008 contending individually, and on behalf of others similarly situated, that Liberty Mutual had misclassified them as exempt from overtime pay.[5]  After two in–person settlement conferences and a voluntary mediation failed (discussed further in Plaintiffs' Motion for Preliminary Approval[6]), Liberty Mutual aggressively defended against both the collective treatment of Plaintiffs' claims and the misclassification question at the core of this case, contending the Sales Reps satisfied one or more of three exemption defenses:  (1) the outside sales exemption; (2) the highly-compensated employee exemption; and (3) the combination/hybrid exemption.[7]  Liberty Mutual's unwavering position was, and continues to be, that it properly classified its Sales Reps as overtime exempt and that their work varied to such a degree that commonality and typicality could not be satisfied for purposes of class certification.

Liberty Mutual further contended that any overtime liability that was due should be calculated under the "fluctuating workweek" method ("FWW"),[8] which would reduce the Plaintiffs' damages by more than 2/3, since the FWW method calculates overtime at only "one-half" of the regular rate (instead of "time and one-half"), and dictates that the regular rate be determined by dividing an employee's total compensation by total hours worked rather than their scheduled 37.5 hours per week.[9]  Additionally, Liberty Mutual disputed the number of overtime

---

[5] Docket Nos. 1 (Original Complaint) & 3 (First Amended Complaint).
[6] Docket No. 91-6 (Affidavit of Michael A. Starzyk), ¶¶ 8-17.
[7] *See* Docket No. 22 (Liberty Mutual's Opposition to Plaintiffs' Motion for Conditional Certification as a Collective Action).
[8] Docket No. 91-6 (Starzyk Affidavit), ¶ 16.
[9] 29 C.F.R. § 778.114(a).

hours worked by Class Members.[10]

### B. Plaintiffs' Motion And Defendant's Vigorous Opposition To Certification.

Plaintiffs' Motion for Conditional Certification was fully briefed as of March 12, 2009.[11] In the following months, the parties engaged in significant discovery (discussed in detail in Plaintiffs' Motion for Preliminary Approval) and Liberty Mutual produced 61 sworn Declarations (mostly from current Sales Reps) that ostensibly support its positions against class treatment and Plaintiffs' misclassification theory and in favor of application of the FWW method of calculating overtime.[12] Plaintiffs filed a Motion to Strike the Declarations filed by Liberty Mutual in opposition to Plaintiffs' Motion for Conditional Certification and that Motion was also fully briefed by the parties.[13]

### C. Preliminary Approval.

The Motion for Preliminary Approval was filed on December 7, 2009.[14] The parties appeared before the Honorable Melinda Harmon on December 16, 2009 for a hearing on that motion, and the Court granted preliminary approval.[15] On the same date, the parties filed an agreed motion for approval of the Supplemental Memorandum of Agreement (settling the *Gonzalez* Litigation), as well as revised Notices "B" and "C" to New York Class Members because of the resolution of the *Gonzalez* Litigation referenced in the previously approved versions.[16] On January 8, 2010, the Court entered an Order approving of the Supplemental Memorandum of Agreement and revised notices to the New York class members.[17]

---

[10] Docket No. 91-6 (Starzyk Affidavit), ¶ 16.
[11] Docket No. 25 (Reply).
[12] Docket No. 91-6 (Starzyk Affidavit), ¶ 22.
[13] Docket Nos. 59, 61 & 68.
[14] Docket Nos. 91 (Plaintiffs' Unopposed Motion for Preliminary Approval) & 94 (Plaintiffs' Request for Hearing).
[15] Docket No. 99 (12/16/09 Order).
[16] Docket No. 101.
[17] Docket No. 102 (1/8/10 Order).

D.     **Claims Administration.**

Consistent with the Court's December 16, 2009 and January 8, 2010 Orders granting preliminary approval, on January 5, 2010, Defendant provided the Class List and Data[18] to A.B. Data, Ltd. ("AB Data"), a well regarded third-party administrator, for the distribution of the Notice and Claim Forms.[19]  Prior to mailing the Notice and Claim Forms, AB Data customized them to include each Class Members' estimated individual settlement payment and ran a check of the Class Members' addresses against those on file with the United States Postal Service's National Change of Address database to update Class Members' addresses.[20]  On January 22, 2010, AB Data mailed the Notice and Claim Forms to Class Members by United States Postal Service First Class Mail.[21]

Class Members were given 60 days to submit a Claim Form and 45 days to request exclusion from or object to the Settlement.[22]  AB Data performed a skip trace on all returned mail with no forwarding addresses to locate new addresses.[23]

The Class consists of 3,250 current and former Liberty Mutual Sales Reps.  In response, 2,737 Class Members (84% of the Class) have opted-in to the Settlement to claim a total of $24,102,651.30 of the Class Settlement Amount.[24]  Of the 3,250 putative class members who were sent notices, only one submitted a request to be excluded from the Class,[25] and only one participating Class Member objected to the Settlement. [26]

---

[18] Ex. 1, Settlement Agreement, §8.1 (defining "Class List and Data").
[19] Docket No. 104, Verkhovskaya Affidavit, ¶ 6.
[20] *Id.*, ¶¶ 6-10.
[21] *Id.*, ¶ 10.
[22] Docket No. 99; Docket No. 104, Verkhovskaya Affidavit, ¶¶ 10, 20, 22 & 33.
[23] Docket No. 104, Verkhovskaya Affidavit, ¶¶ 11-13.
[24] *Id.*, ¶ 40.
[25] *Id.*, ¶¶ 20-24.
[26] *Id.*

## II.     THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL.

Well-established precedent makes clear that settlements such as the one at bar, which are reached through arms-length negotiation with the assistance of counsel, are strongly favored. *Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("'[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class actions suits.'"); *Schwartz v. TXU Corp.*, 2005 WL 3148350 *23 (N.D. Tex. Nov. 8, 2005).

In determining if a settlement meets Rule 23's final approval standards, the district court must find that the settlement is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  There is an initial presumption of fairness when a proposed class settlement is negotiated at arm's length and presented for court approval.  *See* Newberg & Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002), § 11:41 (hereafter "Newberg"). This determination to approve or reject a settlement is made in the discretion of the trial court.  *In re Enron Corp. Securities & Derivative Litigation*, 228 F.R.D. 541, 553-554 (S.D. Tex. 2005).   In assessing a settlement, the district court balances the following factors:   the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement.  *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982).  Here, each of these factors weigh in favor of the Court granting final approval of the Settlement.

A.    **The Strength Of Plaintiffs' Case.**

Assessing the strength of a plaintiff's case and its likelihood of recovery involves weighing the case's merits and the maximum potential recovery against the actual settlement amount.  *See* Newberg, § 11:44.  It is <u>not</u> necessary, however, for the Court to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute.  *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 212 (5th Cir. 1981); *Parker, supra,* 667 F.2d at 1209.

1.    *Risks to class certification.*

Here, risks to class certification were evident during the parties' extensive briefing on Plaintiffs' Motion for Conditional Certification, discovery and settlement negotiations.  Liberty Mutual's unwavering position was that its Sales Reps were properly classified as overtime exempt and that collective treatment of Plaintiffs' claims was inappropriate.  Based upon Plaintiffs' counsel's analysis of the 61 Declarations that Liberty Mutual proffered in opposition to conditional certification and/or in discovery, as well as counsel's independent investigation of the duties performed by the numerous class members it interviewed, it was uncertain whether Plaintiffs could survive a motion for summary judgment as to whether the class was properly exempted.  This legal uncertainty is, of course, in addition to the other risks of losing Plaintiffs' Motion for Conditional Certification and/or being decertified later even if the class were conditionally certified.

Indeed, in the roughly six-month period between the parties' briefing on Plaintiffs' Motion for Conditional Certification and negotiated settlement, several court opinions (including in even traditionally pro-plaintiff venues like California) were handed down that denied class

certification in FLSA actions involving financial service industry employees.[27]

## 2. *Risks to liability.*

In addition to contesting collective treatment and the underlying classification issue, Liberty Mutual also strongly disputed the number of overtime hours worked by Class Members and contended that any overtime liability needed to be calculated at only a 0.5 (rather than 1.5) multiplier of the regular pay rate, pursuant to the FWW method of calculating overtime. While the U.S. District Court for the Western District of Texas has held that applying the FWW method to pay less than time-and-a-half in a misclassification case is fundamentally at odds with the FLSA, the Fifth Circuit had previously applied the FWW method to calculate damages in a misclassification case. *Blackmon v. Brookshire Grocery Co.*, 835 F.3d 1135, 1138 (5th Cir. 1988); *In re Texas EZ Pawn Fair Labor Standards Act Litig.*, 2008 WL 2513682 (W.D. Tex. 2008). This adverse Fifth Circuit authority, along with authority from numerous other federal courts, presented the greatest challenge to a recovery of unpaid back wages at 1.5 times (rather than only 0.5 times) the Plaintiffs' regular rates.

## B.    The Risk, Expense, Complexity And Likely Duration Of Further Litigation.

"Additional elements that should be considered by the court in determining the appropriateness of settlement are the likely expenses of continuing the litigation and its prospects for relief for the class." Newberg, § 11:50. In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

---

[27] *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) (holding California district court did not abuse its discretion in denying class certification in FLSA case filed by external home loan consultants); *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 517 F.3d 953 (9th Cir. 2009) (reversing California district court's class certification in FLSA case file by home mortgage consultants); *Brechler v. Qwest Communications Int'l, Inc.*, Case No. cv-06-00940-PHX-ROS (D. Ariz. March 17, 2009) (Order decertifying class of call center workers); *Miller v. Farmers Ins. Exchange*, 481 F.3d 1119 (9th Cir. 2007) (reversing a $52.5 million judgment in an overtime class action involving insurance claims adjusters); *see also* Schneider & Stine, WAGE AND HOUR LAW: COMPLIANCE & PRACTICE, § 20:19.50 ("Decertification actions frequently are successful.").

uncertain results. *Id.* Here, the settlement was reached before a ruling was issued on Plaintiffs'

Motion for Conditional Certification. With class certification would have come a range of

certain and contingent procedural developments, including a possible appeal (irrespective of the

certification result), notice to the class, post-certification merits discovery, a defense motion for

decertification, and trial preparation. Class certification and its attendant procedures would have

been time-consuming and expensive for both the parties and the Court.

Had the parties not reached a compromise, the trial preparation would have consumed

months and actual appearances for trial would likely have spanned weeks. (*See* Docket No. 18,

Joint Discovery/Case Management Plan filed January 30, 2009 (Liberty Mutual estimating that

trial as a collective action would take "20-25 court days, or longer").) Accordingly, the high risk,

expense, and complex nature of a lengthy class action trial support final approval of this class

action settlement. Additionally, the settlement of this case will also effectuate the settlement of

the *Gonzalez* Litigation that is pending in New York.

### C.     The Risk Of Maintaining Class Action Status Throughout Trial.

The law favors settlement, particularly in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation. *See* Newberg, §

11.41. The uncertainty of outcome, difficulties of proof, and length of litigation of class action

suits lend them readily to compromise and settlement. *Id.*

Although Plaintiffs' counsel believes it could have obtained class certification and

maintained such certification throughout trial, there were objective and substantial risks

concerning not only class certification, but also of Liberty Mutual prevailing on its affirmative

defenses on the merits, or succeeding on appeal after still more years of uncertainty. If class

certification had been conditionally granted, Liberty Mutual could still move to decertify later in

the case.  On balance, Class Members will benefit more from the Settlement and concomitant, immediate resolution of their claims rather than having risked failure at trial or on certification or summary judgment.

### D.     The Amount Offered In Settlement.

Liberty Mutual agreed to pay up to $33,750,000.00 to settle.[28]  Plaintiffs' attorneys' fees will be paid out of the common fund *that is actually claimed and paid out* (instead of off the top, as is done in most FLSA cases), and the Named Plaintiff Service Payments and costs will also be paid from the common fund.[29]  Liberty Mutual will be responsible for the employer's standard share of liability for payroll taxes from its own funds (and not from the Settlement Amount).[30]  Additionally, because each Class Member's individual share is based upon his/her compensation earned during the class period relative to the other Class Members, the distribution is weighted in favor of those who were most affected by the alleged wage and hour violations.[31]

### E.     The Extent Of Discovery Completed And The Stage Of The Proceedings.

Liberty Mutual produced over 60,000 pages of Bates-labeled documents in this action.[32]  On their part, Plaintiffs have produced almost 2,700 pages of Bates-labeled documents.[33]  In discovery, Liberty Mutual expanded the number of witness declarations produced in opposition to collective treatment of the Plaintiffs' claims and the underlying merits of Plaintiffs' claims from the original 33 to 61.[34]

Plaintiffs served the following written discovery requests to which Liberty Mutual

---

[28] Ex. 1, Settlement Agreement, § 1.9.
[29] *Id.* at § 12.2.  The fairness and reasonableness of the proposed payment of Class Counsel's fees and costs and the Named Plaintiff Service Payments are addressed in Plaintiffs' Motion for Award of Common Fund Attorneys' Fees, Litigation Expenses, and Named Plaintiff Service Payments Pursuant to FLSA Collective/Class Action Settlement.
[30] *Id.* at § 14.1.
[31] Ex. 3, Starzyk Affidavit, ¶ 4.
[32] Ex. 1, Settlement Agreement, §  2.
[33] *Id.*
[34] *Id.*

responded:

- Eight sets of Requests for Production (collectively containing 595 Requests, excluding subparts);

- Five sets of Interrogatories (collectively containing 44 Interrogatories, excluding subparts); and

- Four sets of Requests for Admissions (collectively containing 108 Requests).[35]

Plaintiffs deposed six individuals in New York, Georgia, and Massachusetts.[36] This included a deposition of two Liberty Mutual IT professionals related to the parties' numerous disputes over the proper scope of electronic discovery.[37]

Liberty Mutual served the following written discovery requests to which Plaintiffs responded:

- Seven individual sets of Requests for Production directed to each of seven original plaintiffs (containing 51 Requests per set, for a total of 357 Requests among the seven sets);

- A set of Requests for Production directed to all the original named plaintiffs and those who later filed consents to join this lawsuit (which to date total over 160 current and former Sales Reps) (containing 19 Requests); and

- Seven individual sets of Requests for Admissions directed to each of seven original named plaintiffs (containing 25 Requests per set, for a total of 175 Requests).[38]

In June, Plaintiffs also prosecuted a Motion to Compel production of witness "Participation Agreements" executed by Liberty Mutual's Declarants and the identities and contact information for the co-workers and managers (current and going back to January 1, 2006) of the Declarants and all individuals who worked in their offices going back to January 1,

---

[35] Id.
[36] Id.
[37] Id.
[38] Id.

2006.[39]   On June 15, 2009, Magistrate Frances H. Stacy granted in part and denied in part this

Motion.[40]

### F.    Class Counsel.

With regard to class action settlements, the opinions of counsel should be given deference

both because of counsel's familiarity with this litigation and previous experience with similar

cases.  *Cotton, supra,* 559 F.2d at 1330 ("Indeed the trial judge absent fraud, collusion, or the

like should be hesitant to substitute its own judgment for that of [experienced] counsel.")

Plaintiffs' counsel's primary area of practice is employment litigation.[41]   As discussed further in

the Declaration of John Coffee, Jr., and Plaintiffs' Unopposed Motion for Award of Common

Fund Attorneys' Fee, the present settlement significantly outperforms comparable FLSA

settlements in the financial services industry.

### G.    The Reaction Of The Class Members To The Settlement.

The most democratic measure of a settlement's "fairness" is the extent to which Class

Members object, and through their objections point to a settlement's unfairness.   *See, e.g.,*

*DeHoyos v. Allstate Corp.* 240 F.R.D. 269, 293 (W.D. Tex. 2007) ("in light of the undisputed

reach of the nationwide notice, the minimal level of opposition from absent class members

weighs in favor of approving the settlement"); *Reynolds v. Nat'l Football League*, 584 F.2d 280

(8th Cir. 1978) (16 objectors out of 5,400 strongest evidence of no dissatisfaction with settlement

among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th

Cir. 1977) ("The very fact that [the objector] alone actively stands on the 'outside' opposing the

settlement agreement is of striking significance and import.").   Here, only one participating Class

Member has objected to the settlement and only one has requested exclusion from the New York

---

[39] Docket Nos. 51 (Plaintiffs' Motion) & 55 (Liberty Mutual's Opposition).
[40] Docket Nos. 70 (Order) & 72 (Amended Order).
[41] Ex. 3, Starzyk Affidavit, ¶ 40.

Class.[42]  The overwhelmingly positive response can be taken as a reliable confirmation of the settlement's fairness, and the propriety of final approval.  Eighty-four percent of the Class Members participated in the settlement, claiming 95.5% of the settlement funds.  Thus, Class Members who were most affected by the alleged wage and hour violations submitted claims at a higher rate.

### H.    The Settlement Negotiations Were Intense And Conducted At Arm's Length.

Courts respect the integrity of counsel and presume the absence of fraud or collusion in the negotiation of settlement, unless there is evidence to the contrary.  *See* Newberg, § 11:51. Plaintiffs and the putative class were represented by experienced counsel.[43]  Liberty Mutual conveyed a clear intention both to aggressively oppose conditional and final certification and to defend the case on the merits, including with the assertion of three alleged exemption defenses.[44] The mediation in March was conducted before an experienced mediator,[45] and counsel also traveled between Texas and California to try to negotiate a settlement in person.[46]  The case was intensely litigated, with nearly 63,000 pages of documents exchanged between the parties, discovery motions, and Class Counsel traveling to New York, Georgia, and Massachusetts to take depositions.[47]

On its part, Class Counsel set out at the earliest stages to obtain sufficient contact information to be able to gain an understanding of the case by interviewing Class Members directly, circumventing the monopoly on information that often benefits employer defendants in

---

[42] Docket No. 104, Verkhovskaya Affidavit, ¶¶ 20-24.
[43] Ex. 3, Starzyk Affidavit, ¶¶ 40-47 & 57-59.
[44] *Id.*, ¶¶ 19-24.
[45] *Id.*, ¶¶ 17-18.
[46] *Id.*, ¶¶ 12-13 & 15.
[47] *Id.*, ¶¶ 19-30.

wage and hour class actions.[48]  Class Counsel's efforts resulted in over 160 current and former

Sales Reps giving their consent to join this lawsuit independently and without the benefit of

conditional certification.[49]

Accordingly, there is every indication that the parties maintained the requisite arms'

length posture in their negotiations, and that Class Members benefited in the ways contemplated

by this requirement.  The Class Members had a full 60-day Claim Period within which to assess

the settlement terms and decide whether to participate in the settlement.  The Notices

exhaustively apprised Class Members of all pertinent information and, like the Settlement

Agreement itself, they were the product of the professional but intense relations between the

parties that characterized this action.[50]

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant final approval of the

Settlement Agreement.

Respectfully submitted,

   /Michael A. Starzyk/
**Michael A. Starzyk**
Attorney-in-Charge
Texas Bar No. 00788461
Southern District of Texas Bar No.16926
**April L. Walter**
Texas Bar No. 24052793
Southern District of Texas Bar No. 713287

**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

---

[48] *Id.*, ¶ 57-59 & 65.
[49] *Id.*, ¶ 37; s*ee also, e.g.,* Docket Nos. 26-30, 32-33, 42, 47, 50, 52-53, 69, 78 & 81.
[50] *See generally* Ex. 3, Starzyk Affidavit.

**J.P. Hughes, Jr.**
Texas Bar No. 24048965
Southern District of Texas Bar No. 943894

**J.P. HUGHES & COMPANY**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [662] 234-6042
**Russ M. Herman**
Eastern District of Louisiana Bar No. 6819
**Stephen J. Herman**
Eastern District of Louisiana Bar No. 23129
**James C. Klick**
Eastern District of Louisiana Bar No. 7451
**John S. Creevy**
Eastern District of Louisiana Bar No. 30879

**HERMAN, HERMAN, KATZ & COTLAR, L.L.P.**
820 O'Keefe Avenue
New Orleans, LA 70113
T: [504] 581-4892
F: [504] 561-6024

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I certify that I have conferred with counsel for Defendant regarding this Motion and that

Defendant does not oppose it.


    /Michael A. Starzyk/
    **Michael A. Starzyk**

15

## CERTIFICATE OF SERVICE

I certify that on May 10, 2010, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Douglas R. Hart
Geoffrey D. DeBoskey
Jason D. Bosch
Dana Finkey
Katherine A. Roberts
Sheppard, Mullin, Richter & Hampton, L.L.P.
333 South Hope Street, 48th Floor
Los Angeles, CA. 90071-1448
Facsimile: 213-620-1398

Teresa S. Valderrama
Jackson Lewis L.L.P.
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, TX 77002
Facsimile: 713-650-0405

    /Michael A. Starzyk/
    **Michael A. Starzyk**